JUDGE PATTERSON

08 CV 5450

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

KOREA LINE CORPORATION,

                    Plaintiff,

    - against -

FARENCO SHIPPING CO. LTD.,

                    Defendant.

:    08 Civ.

ECEIVE

JUN 17 2008

U.S.D.C. S.D. N.Y.
CASHIERS

-----------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, KOREA LINE CORPORATION, (hereinafter referred to as "Plaintiff"), by and

through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against

the Defendant, FARENCO SHIPPING CO. LTD., (hereinafter referred to as "Defendant")

alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law with a principal place of

business in Seoul, South Korea.

3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity organized and existing under foreign law with a principal place of business

in the British Virgin Islands.

4.     By a charter party entered into on January 9, 2006 on the NYPE 1946 charter party form, Plaintiff, as disponent owner, time chartered to Defendant the M/V YASA AYSEN for a one time charter trip with a duration of about 25 to 30 days. Pursuant to clause 4 the charter party the hire rate was $18,900.00 per day. *See charter party attached as Exhibit 1.*

5.     Pursuant to the charter party dated January 9, 2006, Plaintiff duly delivered the Vessel into the Defendant's service. Thereafter, Defendant employed the Vessel to call at Panjim for cargo loading a cargo of iron ore fines in bulk. While there, Defendant illegally and wrongfully placed the Vessel off-hire for the period when the Vessel's No. 1 Grab was out of order notwithstanding that this neither affected the loading rate nor time of loading completion. *See Statement of Facts attached as Exhibit 2.* Specifically, Defendant wrongfully deducted $18,941.59 from hire in violation of clause 4 of the charter party. *See Statement of Account attached as Exhibit 3.*

6.     In breach of its obligations under the charter party dated January 9, 2006, Defendant has failed to pay the outstanding hire despite repeated demands.

7.     Pursuant to the charter party dated January 9, 2006 all disputes must to be submitted to arbitration in London with English Law to apply. Plaintiff is preparing to commence arbitration against Defendant. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration in respect of its claim under the charter party dated January 9, 2006:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $18,900.00; |
| B. | Interest on principal claim at 8% compounded quarterly for three years: | $5,069.77; |
| C. | Attorneys' fees and costs of arbitration: | $15,000.00; |

2

Total for claim under charter party dated January 9, 2006:     $38,969.77.

8.    Additionally, by a charter party entered into on June 28, 2005 on the NYPE 1946 charter party form, Plaintiff, as disponent owner, time chartered to Defendant the M/V GOA for a one time charter trip with a duration of about 25 to 30 days. Pursuant to clause 4 the charter party the hire rate was $14,500.00 per day. *See charter party attached as Exhibit 4.*

9.    Pursuant to the charter party dated June 28, 2005, Plaintiff duly delivered the Vessel into the Defendant's service. Thereafter, Defendant employed the Vessel to call at Lianyungang to load a cargo of MET coke in bulk. In breach of its obligations under the charter party dated June 28, 2005, Defendant has failed to pay the outstanding hire despite repeated demands. Specifically, Defendant has breached this charter party in failing to pay outstanding hire in the amount of $32,644.76. *See Statement of Account attached as Exhibit 5.*

10.    Pursuant to the charter party dated June 28, 2005 all disputes must to be submitted to arbitration in London with English Law to apply. Plaintiff is preparing to commence arbitration against Defendant. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law.

11.    As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration in respect of its claim under the charter party dated June 28, 2005:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $32,644.76; |
| B. | Interest on principal claim at 8% compounded quarterly for five years: | $13,540.33; |
| C. | Attorneys' fees and costs of arbitration: | $30,000.00; |
| | **Total for claim under charter party dated June 28, 2005:** | **$76,185.09.** |

3

12.     The total of the two charter party claims described above is \$115,154.86, *i.e.*, \$38,969.77 + \$76,185.09 = \$115,154.86.

13.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

14.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That the Court retain jurisdiction to compel the Defendant to arbitrate, if necessary, in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also

4

pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of $115,154.86 calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.  That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court.

E.  That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.  That this Court award Plaintiff its attorney's fees and costs of this action; and

G.  That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: June 16, 2008
New York, NY

The Plaintiff,
KOREA LINE CORPORATION,

By: _____

Charles E. Murphy (CM 2125)
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
cem@lenmur.com

5

## ATTORNEY'S VERIFICATION

State of New York )
                  )    ss.:   New York City
County of New York )

1. My name is Charles E. Murphy.

2. I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5. The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6. The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      June 16, 2008
              New York, NY

                                            Charles E. Murphy

6

# EXHIBIT 1

# Time Charter

## GOVERNMENT FORM

### Approved by the New York Produce Exchange

November 6th, 1913–Amended October 20th, 1921 ; August 6th, 1931 ; October 3rd, 1946

1. **This Charter Party,** made and concluded in.......... *Seoul,* ................ *9th* ......day of ......*January,*........ *2006*...19........
2. Between........*Korea Line Corporation, Seoul*...............................................................................
3. as *disponent Owners* Owners of the good..................... Steamship/Motorship *M.V. "YASA AYSEN"* of................................................
4. of ........ tons gross register, and ............ tons net register, having engines of .................. indicated horse power
5. and with hull, machinery and equipment in a thoroughly efficient state, and classed ....................................................
6. at..................... of about ........................ subic feet bale capacity, and about.........tons of 2240 lbs.
7. deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,
8. allowing a minimum of fifty tons) on a draft of.........feet........ inches on .......... Summer freeboard, inclusive of permanent bunkers,
9. which are of the capacity of about ........................................... tons of fuel, and capable of steaming, fully laden, under good weather
10. conditions about knots on a consumption of about tons of best Welsh coal-best grade fuel oil-best grade Diesel oil,
11. new *(See Clause 67)*..........................................................................................................
12. ........... and .......... *Farenco Shipping Co., Ltd., BVI*....Charterers of the City of .......................................
13. **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14. about .........., *one time charter trip via safe port(s), safe berth(s), safe anchorage(s), always afloat, always within Institutes*
    *Warranty Limits with a cargo of harmless intended Iron ore via India, duration about 25-30days without guarantee.*
15. *Vessel not to trade to areas where ice/ice like conditions prevail and not to push or force ice nor follow ice breakers* .......... within
    below mentioned trading limits.
16. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17. the fulfillment of this Charter Party. *Acceptance of delivery of the vessel by Charterers shall not constitute any waiver of Owner's*
    *obligations under this Charter Party.*
18. Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot Hazira, west coast India*
19. *any time day or night Sundays and Holidays include*
20. in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6), as
21. the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No.5. Vessel on her delivery to be
22. ready to receive cargo, *including grain* with clean-swept, holds. and *Vessel on her delivery to be* tight, staunch, strong and in every way fitted
    for the service *and shall remain so for the currency of this Time Charter,* having water ballast, winches and
23. donkey boiler with sufficient steam power, or if not equipped with donkey boiler,then other power sufficient to run all the winches at one and the same
24. time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25. dise, including petroleum or its products, in proper containers, excluding .....*(See Clause 39)*............................................
26. (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,
27. all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports *and safe*
    *anchorages(also See Clause 42)* in British North
28. America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29. Mexico, and/or South America.................................................................................... and/or Europe
30. and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31. October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic
32. ............................................................................................................................
33. ............................................................................................................................
34. ............................................................................................................................
35. as the Charterers or their Agents shall direct, on the following conditions :
36.     1. That the Owners shall provide and pay for all provisions, wages, *including overtime, immigration* and consular shipping and discharging
37. fees of the Crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water *fresh water and lubricating*
    *oil* and maintain her class and keep
38. the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service *with inspection certificates necessary to*
    *comply with safety and health regulations and with current requirements at all ports of call for and during the service.*
39.     2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *canal tolls,*
    compulsory, *customary and highly recommended for similar vessel's* Pilotages, Agencies, Commissions,
40. Consular Charges *garbage removal if compulsory* (except those pertaining to the Crew *or flag of the vessel*), and all other usual expenses except
    those before stated, but when the vessel puts into
41. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42. illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43. charter to be for Charterers' account. ~~All other designations to be for Charterers' account after vessel has been on charter for a continuous period~~
44. ~~of six months or more.~~ *Owner's to provide and keep on board valid disinsitation certificate throughout the Time Charter period.*
45. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46. Owners to allow them the use of any dunnage, and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47. for dunnage, they making good any damage thereto.
48. 3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~
49. ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than~~ ................... ~~tons and not more than~~
50. ................... ~~tons and to be re-delivered with not less than~~ ................... ~~tons and not more than~~ ................... tons. *(See Clause 29)*
51. 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of ..... *As per agreed Clause 79*
52. ................... ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~
53. ~~stores, on~~ ................... ~~summer freeboard,~~ per *day Calendar Month,* commencing on and from the *time and day* of her delivery, as aforesaid, and at
54. and after the same rate for any part of a *day* month; hire to continue until the *time hour of the day* of her re-delivery *as per Clause 60* in like good order and
    condition, ordinary
55. wear and tear excepted, to the Owners (unless lost) ~~at~~ *on dropping last outward sea pilot one safe port Singapore/Japan range*
56. *including People's Republic of China port in Charterers' option, any time day or night Sundays and Holidays included*
    unless otherwise mutually agreed. Charterers are to give Owners not less than *(See Clause 35)* days
57. notice of vessels expected date of re-delivery, and probable port.
58. 5. Payment of said hire to be made *as per Clause 30* ~~in New York in cash~~ United States Currency, semi-monthly in advance, and for the last half
    month or
59. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60. due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61. hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62. terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~
63. ~~following that on which written notice of readiness has been give to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~
64. ~~to have the privilege of using vessel at once, such time used to count as hire.~~
65. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject
66. to 2½% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67. of such advances.
68. 6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place *or such open roadstead anchorage,*
    *however if such anchorage place is not customary for same size of vessel, Owners, prior consent to be necessary* that
    Charterers or their Agents may
69. direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such place where it is customary for similar size vessel to safely~~
70. ~~lie aground~~ *(See Clause 109)*
71. 7. That the whole reach of the Vessel's Hold, Decks, and *other* usual place of loading (not more than she can reasonably stow and carry), also
72. accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73. tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~
74. ~~paying Owners~~ ................... ~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~
75. ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~
76. 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77. boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78. agency; and Charterers are to load, stow, and trim, *and discharge* the cargo at their expense under the supervision of the Captain, who is to sign Bills of
    Lading, for
79. cargo as presented, in *strict* conformity with Mate's ~~or Tally Clerk's~~ *and without prejudice to this Charter Party* receipts.
80. 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81. receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments
82. 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
83. with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
84. rate of *USD10.00* $~~1.00~~ per day. Owners ~~to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual~~
    ~~Tally~~ *(See Clause 76)*
85. Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling.
86. 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the
87. Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88. terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-
89. sumption of fuel.
90. 12. That the Captain shall use diligence in *the care, custody and* ~~during for~~ the ventilation of the cargo.
91. 13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ ...................
92. ...................
93. ~~or giving written notice thereof to the Owners or their Agents~~ ...... ~~days previous to the expiration of the first named term, or any declared option.~~
94. 14. That if required by Charterers, time not to commence before ...... *00; 01 hours 15th January, 2006* ..............., and should vessel

95.  not have *been delivered* given written notice of readiness on or before *24:00 hours 20th January, 2006* but not later than 4 p.m. Charterers or
96.  their Agents to have the option of canceling this Charter at any time not later than the day of vessel's readiness. *(See Clause 34)*
97.  15. That in the event of the loss of time from deficiency *and/or default of crew or officers and/or deficiency* of men or stores, fire,
breakdown or damages to hull, machinery or equipment *unless such breakdown or damage caused by Charterers and/or their servants and/or their agents*
98.  grounding, detention by average accidents to ship or cargo, *or oil pollution only due to ship's fault,* drydocking for the purpose of examination or painting bottom, or by any other cause *not excepted in this Charter Party*
99.  preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost, and if upon the voyage the speed be reduced by
100.  defect in or breakdown of any part of her hull, machinery or equipment *unless such defects or breakdown caused by Charterers and/or their servants and/or their agents,* the time so lost, and the cost of any extra fuel consumed in consequence
101.  thereof, and all extra expenses shall be deducted from the hire.
102.  16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
103.  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
104.  Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.
105.  The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessel in distress, and to deviate for the
106.  purpose of saving life and property *(also See Clause 62)*
107.  17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to *two* three persons *in London* at New York,
108.  one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be *according to the London Arbitration rules and laws, the decision being* final, and for
109.  the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial *shipping* men. *This Charter Party shall be governed by and construed in accordance with English Law.*
110.  18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Aver-
111.  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112.  deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113.  might have priority over the title and interest of the owners in the vessel.
114.  19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115.  Crew's proportion. General Average shall be adjusted, stated and settled *in London*, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of
116.  York-Antwerp Rules *1994 or any subsequent amendment,* 1924, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these
117.  Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into
118.  United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at
119.  the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or
120.  bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier
121.  or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if
122.  required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the
123.  carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the
124.  place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in
125.  United States money.
126.  In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,
127.  whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the
128.  goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,
129.  losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the
130.  goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
131.  ships belonged to strangers. *New Jason Clause as attached. Hire is not contribute to General Average.*
132.  Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
133.  20. That Fuel *bunkers* used by the vessel while off hire *to be Owners' account,* also-for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the
134.  cost of replacing same, to be allowed by Owners.
135.  21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
136.  convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in every six months, reckoning from
137.  time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.
138.  ............................................................................................................................................
139.  ............................................................................................................................................
140.  22. Owners shall maintain the gear of the ship as fitted, providing gear *(for all derricks)* capable of handling lifts *as described* up to three tons, also
141.  providing ropes, falls, slings and blocks. If vessel is fitted with *cranes* derricks capable of handling heavier lifts, Owners are to provide necessary gear for
142.  same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for

143. night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The
144. Charterers to have the use of any gear on board the vessel.

145.    23. Vessel to work night and day, if required by Charterers *(See Clause32)*, and winches to be at Charterers' disposal during loading and
    discharging:

146. steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,
147. deck-hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the
148. port, or labour unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or
149. insufficient power to operate winches, Owners to pay for shore-engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned
150. thereby.

151.    24. It is also mutually agreed that this Charter is subject all the terms and provisions of and all the exemptions from liability contained
152. in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled " An Act relating to Navigation of Vessels;
153. etc., " in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clause, both
154. of which are to be included in all bills of lading issued hereunder ;

155.                               U.S.A. Clause Paramount

156. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
157. 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
158. any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any terms of this bill of lading
159. be repugnant to said Act any extent, such terms shall be void to that extent, but no further.

160.                          *New Both-to-Blame Collision Clause as attached*

161. If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
162. Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
163. hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss
164. or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-
165. carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her
166. owners as part of their claim against the carrying ship or carrier.

167.    25. The vessel shall not be required to *force ice or follow ice breakers or to* enter any ice-bound port, or any port where lights or light-ships have
    been or are about to be with-

168. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169. port or to get out after having complete loading or discharging.

170.    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171. navigation of the vessel, *acts of pilots and tugboats except strike and/or boycott not directed against Owners,* insurance, crew, and all
    other matters, same as when trading for their own account.

172.    27. A commission of 2-1/2 *1.25* per cent is payable by the Vessel and Owners to *Ocean Land Shipping Co., Ltd, Beijing plus 1.25percent*
173. *to Everwise International Co., Ltd, Seoul.....................................................................................*

174. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175.    28. An address commission of 2-1/2 *3.75* per cent payable to ....*Charterers* .............. on the hire earned and paid under this Charter.

*Additional Clause 29 to 117, as attached are deemed to form part of this Charter Party.*

    *Charterers:*                              *Owners:*

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9ᵀᴴ JANUARY, 2006

### Clause 29.   BUNKERS ON DELIVERY/REDELIVERY

Bunkers on delivery about 600MT for IFO and about 50/60MT MDO.

Bunkers on redelivery about same quantity as Bunkers on delivery.

Bunker price both ends at USD310per metric ton for IFO and USD520per metric ton for MDO.

However Owners have the option to replenish add bunkers (total 400MT) at Singapore or discharge port at free of charge.

Charterers to pay for estimated bunkers consumption value together with first hire and any minor difference to be settled at same price upon redelivery.

First hire plus estimated bunkers consumption value to reach Singapore to be paid within 3 banking days after delivery.

Charterers/Owners to have the option to bunker for their own account prior to delivery/ redelivery provided not interfering with vessel's operations. Time lost for bunkering, if any, before delivery/redelivery to be for Charterers'/Owners' account respectively.

### Clause 30.   PAYMENT OF HIRE

Payment of hire shall be made by Charterers to the bank account as provided by the Owners in due time free of any bank charges to Owners, except those invoiced by Owners' bank and Owners' bank correspondent.

Evidence of receipt by Owners' bank shall constitute compliance of Charterers' obligation to pay hire in accordance with Clause 5, whether Owners are so notified by the bank or not.

Where there is any failure to make "punctual and regular payment" due to oversight, negligence or error or omission of Charterers or their Agents' employees or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be granted three (3) banking days grace to rectify the failure.

Where so rectified the payment shall stand as "punctual and regular payment"

Owners bank detail: HANA BANK, CHUNGANG CORPORATE CENTER BRANCH
                     SWIFT CODE: HNBNKRSE
                     A/C NO. : 100-265678-00232
                     VIA CITI BANK, NEW YORK
                     SWIFT CODE : CITUS33
                     ABA NO. : 021000089
                     IN FAVOUR OF: KOREA LINE CORPORATION

First 15days hire plus estimated bunkers consumption value to reach Singapore to be paid within 3 banking days after delivery. Additional hire for estimated time remaining to redelivery to be paid in advance between bunkers on delivery/redelivery to be settled immediately after vessel's redelivery.

### Clause 31.   NECESSARY DOCUMENTATION FOR EQUIPMENT

With reference to Clause 15, it is agreed as follows:

Referring to line 97, the lack on board at any time of any necessary documentation attesting to the condition of all equipment and complying with regulations according to vessel's specifications shall be deemed a deficiency with any loss of time occasioned thereby to be treated as off-hire and any other expenses to be for Owners' account.

Referring to lines 97 and 99, the time lost for which hire shall cease (or be suspended) shall also include – inter alia

From the time the vessel puts back to a port or departs from or interrupts the voyage or is withdrawn from the service of Charterers for drydocking, repairs or other Owners' purposes, until the vessel is again in the same position or at a point equivalent thereto.

5



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9TH JANUARY, 2006

Losses of time due to delay to the vessel or interference with Charterers' use of the vessel by strikes, boycotts or secondary boycotts, manifestations or stoppages in any form on account of the vessel's flag, registry, ownership, manning or wages pattern.

### Clause 32.  VESSEL'S LIGHTING

With reference to Clause 23, it is agreed as follows:

Owners to arrange for the working of all time and necessary overtime/needed for the efficient operation of the vessel in all respects. Owners agree to provide sufficient lighting on board with ship's lights and light clusters to permit night work at all hatches at one and the same time/free of expense to the Charterers.

### Clause 33.  FLAG/CREW/I.T.F. AND ISM CLAUSE

New flag/port, if changed, to be advised and also current name is subject to new registry approvals : The Vessel will be registered in Turkey in principle, but the selection of the Vessel's flag is at Owners' discretion, together with the Vessel's crew. Owners have the option to change her flag and nationality of crew to another, if necessary, during the currency of this charter.

Owners is normally using Turkish crew on their Owned vessels.

The Owners of the vessel guarantee that the minimum terms and conditions of employment of the crew of the vessel are now or will be prior to presentation of the vessel for delivery and will remain for the period of this Charter Party covered by an I.T.F. agreement or a bona fide Trade Union Agreement acceptable to I.T.F.

In the event that the vessel is delayed by reason of boycotts, strikes, labor stoppages or other actions by the ITF against the vessel due to employment conditions, time so lost shall be considered as off-hire and costs directly resulting therefrom are to remain for Owners' account.

During the currency of this Charter Party the Owners shall procure that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account.

### Clause 34.  NOTICES OF DELIVERY (LAY / CAN)

Owners to give about 15, 10, 7, 5 and 3 / 2 / 1 definite delivery notice to Charterers and keep inform vessel itinerary.

### Clause 35.  NOTICES OF REDELIVERY

The Charterers to give redelivery notice to be followed by 15/7/5 days notices with expected redelivery time and port and 3/2/1 days definite notice of redelivery date and port.

Charterers to always keep Owners updated on vessels itinerary.

### Clause 36.  CHARTERERS' INSPECTION

Charterers to have the option of holding an inspection of the vessel at any time between delivery and redelivery, at their risk and expense subject to Owners approval.

In all cases, Owners and Master to give every facility and assistance to carry out this inspection.

### Clause 37.  GRAIN LOADING

Vessel is suitable for carrying full cargoes of heavy grain and/or oilseeds and/or grain or oilseed products (provided within the scope of definition of "grains" in SOLAS 1994 Regulations) in bulk in all holds without requiring any shifting boards. For the carriage of grain and/or oilseeds in bulk, vessel to have on board at any time of this time charter period valid documents and certificates issued by vessel's Classification Society on the basis of the SOLAS 1974 Regulations. Vessel may load bulk grain/ oilseeds and/or grain/oilseed products with two slack holds without any securing arrangements in accordance with approved Grain Loading Booklet, however oil seeds and its products listed in IMDG Code as 4.2 to be excluded.

6


Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9ᵀᴴ JANUARY, 2006

All cargoes to be loaded in accordance with IMO Regulations approved Grain Loading Booklet and to Master's satisfaction.

### Clause 38.  LOADING CONDITION

Owners warrant the vessel can load a full cargo of iron ore to full deadweight capacity in alternate holds (No.2 and 4 may be empty) as guided in the loading manual booklet. Owners further warrant the vessel can load coal, petcock, anthracite or similar bulk cargoes to full deadweight and/or cubic capacity (whichever is the deciding factor) by spout loading and does not require any special trimming except required by I.M.O. BC Code. The vessel is a self-trimming bulk carrier. Owners represent that the whole space of the vessel's holds and hatches is free from obstructions, available for cargo.

### Clause 39.  CARGO EXCLUSION

Iron ore in bulk.

### Clause 41.  SEA WATER IN DOUBLE-BOTTOM

Always subject to masters discretion and vessel's construction Owners to permit sea water to be placed in any double-bottom tanks except fuel oil, diesel oil and fresh water tanks in order to press up to full capacity to give maximum stability.

### Clause 42.  TRADING EXCLUSIONS.

India/Singapore/China to be allowed.

### Clause 43.  SUEZ AND PANAMA CANALS TONNAGE CERTIFICATES

Throughout the period of the Charter vessel shall have on board current valid Suez and Panama Canals Tonnage Certificates and will so comply with all applicable requirements, regulations and recommendations so as to avoid any delay in transit of canals.

Any delay due to non-compliance or any lack of proper documentation or equipment according to vessel's specification is to be treated as off-hire and any expenses incurred thereby to be for Owners' account.

In the event that time is lost in Owners' obtaining any necessary licenses or permits or similar documents from any authority for Owners' own account, same shall be treated as off-hire and any extra expenses, including any related to inspection of the vessel or crew by any authority, shall be for Owners' account.

Time lost due to lack of licenses/permits/documents of vessel is for Owners' account, time lost due to lack of licenses/permits/documents of cargo is for Charterers' account.

### Clause 44.  CALLING AT U.S. PORTS

It is understood that the vessel has full bunkering privileges at U.S. ports.

The vessel to have USCG Certificate of Financial Responsibility as necessary to comply with the Oil Pollution Act 1990 obligations or any subsequent amendments.

She is not blacklisted by any country including U.S. Government.

### Clause 45.  WAR RISK INSURANCE

Any additional war risk insurance premium over and above Owners' basic/ normal war risk insurance premium for vessel and crew, if any, resulting from Charterers' trading of the vessel to be for the Charterers' account. War bonus to crew, if required to meet Charterers' trade, also to be for Charterers' account. The vessel shall not be required to proceed to a war risk area without Owners' prior consent at first, which not to be unreasonably withheld and unless insurance is available on payment of an additional premium and unless permitted by country of vessel's registry. The Conwartime 1993 as attached to be considered as part of this time charter party.

### Clause 46.  BILLS OF LADING

Charterers or Agents are authorized to issue 2 signed Bills of Lading on Charterers' form as presented on Owner's and Master's behalf, Bills of Lading always to be in strict conformity with mate's receipts.

### Clause 47.  CARGO HOLD CLEANING

Crew can assist in cleaning holds between voyages when requested to do so by Charterers but such cleaning always subject to duration of ballast voyages and to weather conditions and Owners not to be

7


Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

responsible for passing subsequent hold surveys and additional costs including materials supplied. Charterers to pay Owners together with next hire payment USD          per hold for clean cargoes and USD per hold for dirty cargoes (cement/clinker cement/petcoke/sulphur/salt). In any case Owners are not responsible for passing hold survey for loading of next cargo during the entire period it is understood such hold cleaning always provided shore regulations permit. Crew to remove eventual dunnage on to vessel's deck providing regulations permit and in any case same always to be at Charterers' risk and expense. Crew to dispose of dunnage at sea when and where permitted.

### Clause 48.  ARREST

Should the vessel be arrested during the currency of this Charter Party at the suit of any party having or purporting to have a claim against or any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period during which the vessel is not fully at Charterers' disposal and any consequential expenses whatsoever shall be for owners' account, unless such arrest is due to action against Charterers or sub-Charterers or their Agents or the Contractors or the cargo Shippers or Consignees.

### Clause 49.  LOG ABSTRACTS

Master is to forward promptly to Charterers completed log abstracts and port logs in English on the Charterers' forms as provided by the Charterers for both deck and engine for each voyages.

### Clause 50.  DRYDOCKING

The Owners shall have the option to place the vessel in drydock during the currency of this Charter Party at the convenient time and place to be mutually agreed upon between Owners and Charterers for bottom cleaning and painting and/or repair as required by class or dictated by circumstances.
However, The Owners shall notify the Charterers of the intention such drydocking and/or periodical survey with 3 months prior notice except emergency case.

### Clause 51.  CARGO CLAIMS

Cargo claims shall be settled in accordance with the Inter Club New York Produce Exchange Agreement of September, 1996 and any subsequent amendments.

### Clause 52.

ISM Clause as per BIMCO wording to apply.

### Clause 53.  STEVEDORE DAMAGE

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 24 hours after any damage is discovered but in any case prior to ships operations in the next port. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage. Master always to serve notice in writing to such party/parties causing damage(s) to the vessel, holding them responsible for such damage and to endeavor to obtain a signed acknowledgement where ever possible.

In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.

All proven damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the expenses required for the repairs for which the Charterers are responsible, exceed expenses necessary to carry out the
Owners'work. However, if same repairs are held before redelivery while the vessel is under charter of Charterers then the vessel to remain on hire. In case of owners own purpose of drydocking, any repairing time to be Owners account.

8

 Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

### Clause 54.   INSURANCE FOR HULL AND MACHINERY

Owners warrant that the vessel is covered by a reputable first class insurance for hull and machinery and shall remain fully insured throughout the terms of the Charter.

Hull and machinery value is United States Dollars (USD) 37.5 Million.

As long as the vessel is on hire to Charterers, Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters (as and when received from Underwriters, but estimate amount deductible on redelivery) by reason of the vessel being in port for extended periods qualifying for such returns.

### Clause 55.   P&I CLUB

Owners guarantee that the vessel is entered and shall remain entered in a Protection & Indemnity Association, which is a member of the Group of International P&I Clubs, for the duration of this Charter Party. Entry shall include, but not to be limited to, ordinary cover for cargo claims.

It shall be considered a fundamental breach by Owners if the vessel's P.& I. cover or class is cancelled or suspended during the currency of this Charter.

In the case of damage to and/or loss of cargo carried on the vessel in which Owners and/or Charterers' liability could be involved under the terms of this Charter Party, as the case may be, the Owners and/or the Charterers shall request and grant reasonable time extension for commencement of suit in each and every occurrence. Such extensions shall not prejudice the ultimate responsibility of both parties. Liability for cargo claims, as between Owners and Charterers, shall be apportioned as specified by the Interclub New York Produce Exchange Agreement effective from 1996, and its subsequent amendments.

If required by Charterers, and provided accepted by P&I club, Owners to authorize and instruct Owners' P.&.I. Club to confirm directly to any party as ordered by Charterers that the vessel is fully covered for P.&I. and that collection of premiums are up to date.

Owners' P.& I. Club : U.K., London

### Clause 56.   ADDING OFF-HIRE TIME TO THE DURATION

Charterers have the option of adding any off-hire times except off-hire times caused by periodical drydocking to the duration of this Charter Party by giving Owners in writing at least one (1) months notice before redelivery. Charterers' notice shall confirm the approximate off-hire period to be added. The hire applicable to the off-hire time added to the duration of the Charter period to be at the level of the respective off-hire periods.

### Clause 57.   FINANCIAL RESPONSIBILITY IN RESPECT OF POLLUTION

If Owners are required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place or territorial or contiguous waters of any country or state in performance of this Charter Party, Owners shall meet such requirements at Owners' expense.

### Clause 58.   REDELIVERY CONDITIONS

Vessel is to be redelivered with all cargo holds clean-swept and washed down. Charterers to have the option to redeliver the vessel with cargo holds customarily cleaned by stevedores, but paying lumpsum USD5,000.-including removal/disposal of all dunnage/lashing materials/debris and intermediate hatch operation by crews.

Intermediate hold cleaning USD         per hold for clean cargoes and usd         for dirty cargoes (cement/clinker cement/petcoke/sulphur /salt)

9



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

### Clause 59.  LAST HIRE PAYMENTS

Should the vessel be on her voyage to the port of redelivery at the time when payment of hire is due, said payment shall be made for such length of time as Owners or their Agents and Charterers or their Agents may agree upon as the established time necessary to complete the voyage. Bunkers to be taken over by the vessel and estimated disbursements for Owners' account before redelivery to be taken into account and when the vessel is redelivered any difference shall be refunded by Owners or paid by Charterers as the case may be. Charterers have the right to deduct from the last hire payments reasonably estimated Owners' disbursements and estimated bunkers remaining on board on redelivery.

### Clause 60.  TIME ZONE FOR HIRE PAYMENTS

For the purpose of computing hire payments, the time of delivery and redelivery shall be adjusted to reflect the G.M.T. time.

### Clause 61.  CLAUSE PARAMOUNT AND OTHERS

Clause Paramount, New Both to Blame Collision Clause, New Jason Clause, Conwartime 1993, as attached hereto are to be considered part of this Time Charter Party and same are to be incorporated in the Bills of Lading issued hereunder.

### Clause 62.  DEVIATION

Vessel has the liberty to deviate for the purpose of saving life and/or property and tow or assist vessel(s) in distress except in the case of refugees. Such operations not to be deemed a deviation under this Charter Party, but all salvage attribution thus payable to the vessel to be equally divided with Charterers, after proper deduction of expenses, if any, including Captain's and crew's shares incurred in this respect.

### Clause 63.  BUNKERS SPECIFICATIONS

Charterers shall supply bunkers of the following specifications.
1.  Diesel oil     : ISO8217 (1994) DMB or better
2.  Fuel oil      : ISO8217 (1994) RME 25 (180CST) or better

Owners are not to be responsible for possible under-performance and/or over-consumption caused by Charterers' supply of off-specs bunkers.

Charterers option to supply RMF 25 instead of RME 25 and DMA instead of DMB when the grades required are not commercially available in places such as south Africa/etc, but in case supplying RMF 25 charterers to pay of the used bunker additive chemical called "CP-2500" against Owners invoices received from the supplier.

The Charterers shall supply bunkers of a quality suitable for burning in vessel's engines and auxiliaries and which conform to the specification(s) as set out in description clause 67 the Owners reserve their right to make a claim against the Charterers for any damage to the main engines and auxiliaries caused by the use of unsuitable fuels of fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the vessels engines of auxiliaries, the Owners shall not be held responsible for any reduction in the vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.

### Clause 64.

BIMCO Double Banking Clause to be apply in this Charter Party.

### Clause 65.  SLOW STEAM

Charterers have option to slow steam vessel at any time during the course of the Charter Party on the basis of speeds and consumptions which to be advised, but always within a range of safe, operable and harmless to the engine, always subject to masters discretion, weather permitting and vessel's engine makers recommendations.


Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

Clause 66.   COMPLIANCE WITH INTERNATIONAL CONVENTION
In the event of the vessel being prevented from or unable to perform in accordance with the terms of this Charter Party by reason of :

Action on the part of relevant authorities resulting from non-compliance with any compulsory applicable enactments enforcing all or part of any of the International Convention in force.

Labour stoppages in services essential to the operation of the vessel owing to her flag or ownership or management or the conditions of employment on board.

Any loss of time in the event a) and/or b)shall result in the vessel being off-hire and shall be dealt with in accordance with the off-hire clause.
It is understood that, if necessary, vessel will comply with any safety regulations and/or requirements in effect at ports of loading and/or discharging. Although other provisions of this Charter make it the responsibility of the Owners, it is agreed that should the vessel not meet safety rules and regulation Owners will make immediate corrective measures and any stevedore standby time and other expenses involved including off hire will be for Owners' account.

Vessel to be delivered with valid deratisation certificate on board and same to remain valid throughout the currency of this Charter Party.

Clause 67.   VESSEL DESCRIPTION (1)

52,434 MTDWT ON 12.02M DRFT
190M LOA/32.26M BEAM/182M LBP
SDBC/SELF TRIMMING,CLASS NK,UK PNI CLUB
BLT OCT/2000 TSUNEISHI-JAPAN/TURKISH FLAG
INT GRT/NRT 30.303/17.734 TPC ABT 55
5 HO/HA, ABT GRAIN 67.500 CBM/BALE 65.540 CBM
CARGO HOLDS (CBM) GRAIN BALE HATCHCOA
NO 1 CARGO HOLD AND HATCH COAMING 12.590 12.170 672
NO 2 " " 14.560 14.130 603
NO 3 " " 13.407 13.010 545
NO 4 " " 14.455 14.000 545
NO 5 " " 12.488 12.230 545

TOTAL 67.500 65.540 2.910 CBM
HATCH DIMS NO 1 : 20.4 X 18.4 M NO 2/3/4/5 21.25 X 18.4 M
HOLD DIMS (FWD/AFT BULKHEAD X L) NO 1 : 8,4 / 23.6 X 27.2 M
NO 2 : 23.6 / 23.6 X 30.2 M NO 3 : 23.6 / 23.6 X 28,0 M
NO 4 : 23.6 / 23.6 X 28.8 M NO 5 : 23.6 / 10.0 X 28 M
HA CVRS MC GREGOR, END FOLDING TYPE, FOUR PANELS FOR
EACH CARGO HATCHWAY AND CLOSED BOX GIRDER CONSTRUCTION. M.A.N. - B AND W
6S50MC (MARK 6) TYPE 4 X 30 MT ELECTRO HYDRAULIC CRANES, IHI
4 X 12 CBM (14 MTONS)(ADJUSTABLE CAPACITY) SMAG-PEINER ELECTRO-
HYDRAULIC GRABS CRANE OUTREACH: 8.5M SPEED/CONSUMPTION AT
FULL SUMMER DRAFT (12 M) VESSEL MAX.
SPEED IN LADEN CONDITION ABT. 14,00 KN AT SCANTLING DRAFT AND MAIN ENGINE
OUTPUT 90% MCR BSS 15 % SEA MARGIN. ALL SPEED/CONSUMPTION FIGURES
ARE TO BE CONSIDERED AS ABOUT (+/- 0.5KNOT FOR SPEED AND +/- 5% FOR
CONSUMPTION) ARE ALWAYS SUBJECT TO GOOD WEATHER AND SMOOTH
SEA BSS NO ADVERSE CURRENTS/SWELL I.E. MAX
BEAUFORT 4 AND MAX SEASTATE DOUGLAS 3. CHARTERERS TO
SUPPLY FIRST CLASS QUALITY BUNKERS STRICTLY COMPLYING
WITH ISO 8217-96(E) MAXIMUM VISCOSITY OF 180 CTS50 DEGREES CELCIUS, AND
LOWER CALORIFIC VALUE OF 42,7 MJ/KG ENABLING MAIN ENGINE TO OPERATE

11


Everwise
International Co. Ltd

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

WITHOUT
ANY HARMFULL EFFECTS. BUNKER TESTING TO BE ORGANIZED BY OWNERS
/MANAGERS BUT COST ALWASY TO BE FOR CHRTS ACCOUNT.

SPEED (KNOTS) / CONSUMPTION(T/DAY)

| | |
|---|---|
| 12,5 | / 19.5 |
| 13 | /22 |
| 13,5 | /25 |
| 14 | /27 |

IN BALLAST

| | |
|---|---|
| 12 | /17 |
| 12,5 | /19 |
| 13 | /21 |
| 13,5 | /23 |
| 14 | /25 |

GENERATOR CONSUMPTION (T/DDAY MDO)
AT SEA 1,5
AT PORT 3,0 CRANES WORKING
IDLE 1,5
M/E MAY CONSUME MDO DURING MANOEUVERS, DURING NAVIGATION IN
CONFINED RESTRICTED WATERS ETC
BOILER (ONLY AT PORT - T/DAY IFO) 1 TON/DAY

BUNKER SPECS :
IFO GRADE 180 CST RME 25 ISO 8217- 96(E)
MDO GRADE DMA/DMB ISO 8217 - 96(E)
"ALL DETAILS ARE ABOUT"
++

### CHARTERERS QUESTIONNARE.

1) NAME AND EX NAME: MV YASA AYSEN/NIL
2) YEAR BUILT: 2000
3) FLAG: TURKISH
4) TYPE: SDSTBC
5) DWT AND DRAFT IN: (MT/M)
  SUMMER SALT: 52,413/12,024.
  .WINTER SALT: 51,027/11,774
  TROPICAL SALT: 53,803/12,274
  FRESH: 52,412/12,297
  TROPICAL FRESH: 53,772/12,547
6) TPH/TPC (FULL/LIGHT); 55,5/47,1
  LIGHTSHIP: 8,338 MT
7) LOA/BEAM/DEPTH: 190/32,26/17 (M)
8) IMO NUMBER: 9216808
9) CUBIC CAPACITY GRAIN AND BALE/TOTAL AND EACH HOLD:
  ABT GRAIN 67.500 CBM/BALE 65.540 CBM

| CARGO HOLDS (CBM) | | | GRAIN BALE HATCHCOA |
|---|---|---|---|
| NO 1 | CARGO HOLD AND HATCH COAMING | | 12.590 12.170 672 |
| NO 2 | " | " | 14.560 14.130 603 |
| NO 3 | " | " | 13.407 13.010 545 |
| NO 4 | " | " | 14.455 14.000 545 |
| NO 5 | " | " | 12.488 12.230 545 |

TOTAL CBM                                         67.500 65.540 2.910



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9TH JANUARY, 2006

10) NUMBER OF HOLD/HATCHES: 5/5
11) HOLD SIZE (L X W X H) AND
  CLEAR (FLAT) TANKTOP DIMENSION:
HOLD DIMS (FWD/AFT BULKHEAD X L)
NO 1 : 8,4 / 23.6 X 27.2 M
NO 2 : 23.6 / 23.6 X 30.2 M
NO 3 : 23.6 / 23.6 X 28.0 M
NO 4 : 23.6 / 23.6 X 28.8 M
NO 5 : 23.6 / 10.0 X 28 M
12) HATCH SIZE (L X W):
HATCH DIMS NO 1 : 20.4 X 18.4 M
   NO 2/3/4/5 21.25 X 18.4 M
13) TYPE OF HATCH COVERS: HA CVRS MC GREGOR, END FOLDING TYPE, FOUR PANELS
FOR EACH CARGO HATCHWAY AND CLOSED BOX GIRDER CONSTRUCTION.
14) WATERLINE TO TOP OF HATCHCOAMING:
   FULL BALLAST A.P/F.P:
HEIGHT FM WATERLINE TO TOP OF H/COAMING/H/COVER UNDER OPEN CONDITION AT
MIDSHIP
LOADED (FO+DO/800 MT) (MAX) 7,98 MTR AT SUMMER DFRT/12,02 MTR)
LIGHT BLST(FO+DO/800MT) : 14,53 (MAX) DM 5,47 MAX. AIRDRFT 39,8
HEAVY BLST(FO~DO/800MT) 11,91 DM 8,09 MAX AIRDRFT 37,7
FULL BALLAST (M)
NO 1 16,29
NO 3 14,00
NO 5 13,10
15) GEAR CAPACITY/SPEED AND ELECTRIC POWER:
4 PCS ELECTRO HYDROLIC CRANE IHI / MHI
HOISTING LOAD 294 KN (30 MT)
HOISTING SPEED 18,5 METER PER MIN. AT ABT 30 MT LOAD
OUTREACH FROM SHIPSIDE LATING 6,5 M
4 X 12 CBM (14 MTONS) (ADJUSTABLE CAPACITY 6-7,5-8,6-10-12) SMAG-PEINER
ELECTRO-HYDRAULIC GRABS
UNIT WEIGHT OF GRABS : 9 MT
MAXIMUM LIFTING CAP PER CRANE : 30 MT SWL
CRANE JIB LENGTH : 24,63 M
LOWERING SPEED : 50M/MIN
LUFFING SPEED 47S
MAXIMUM CRANE RADIUS : ABT 82 DEGREE
OPENING TIME OF GRABS 20 SECOND
WHILE USING GRAB , CAPACITY OF CRANE IS 24 MT
AS GRAB WEIGHT IS 9,06 MT
16) MAX OUTREACH OF CRANES: 8,5 M
17) GRABS: 4
18) INTERNATIONAL GRT/NRT: 30,303/17,734
19) SPEED/CONSUMPTION (LADEN/BALLAST):
SPEED (KNOTS) / CONSUMPTION(T/DAY)

| | |
|---|---|
| 12,5 | / 19.5 |
| 13 | /22 |
| 13,5 | /25 |
| 14 | /27 |

IN BALLAST

| | |
|---|---|
| 12 | /17 |
| 12,5 | /19 |
| 13 | /21 |
| 13,5 | /23 |


Everwise
International Co. Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9TH JANUARY, 2006

14              /26

GENERATOR CONSUMPTION (T/DDAY MDO)
AT SEA 1,5
AT PORT 3,0 CRANES WORKING
IDLE 1,5
M/E MAY CONSUME MDO DURING MANOEUVERS, DURING NAVIGATION IN
CONFINED RESTRICTED WATERS ETC
BOILER (ONLY AT PORT - T/DAY IFO) 1 TON/DAY
20) CONSUMPTION IN PORT (24 HRS);
SPEED (KNOTS) CONSUMPTION(T/DAY)

| 12,5 | 19.5 |
| 13 | 22 |
| 13,5 | 25 |
| 14 | 27 |
| IN BALLAST | |
| 12 | 17 |
| 12,5 | 19 |
| 13 | 21 |
| 13,5 | 23 |
| 14 | 26 |

GENERATOR CONSUMPTION (T/DAY MDO)
AT SEA 1,5
AT PORT 3,0 CRANES WORKING
IDLE 1,5
M/E MAY CONSUME MDO DURING MANOEUVERS, DURING NAVIGATION IN
CONFINED RESTRICTED WATERS ETC
BOILER (ONLY AT PORT - T/DAY IFO) 1 TON/DAY
ALL DETS ABT.

21) BUNKER TANK CAPCITY/BUNKER SPEC:
FO TOTAL 2,386.9 M3 (%100 FULL), 2,291.5 (%96 FULL)
DO TOTAL 183,9 M3 (%100 FULL), 176,6 (%96 FULL)
BUNKER SPEC:
IFO GRADE 180 CST RME 25 ISO 8217- 96(E)
MDO GRADE DMA/DMB ISO 8217 - 96(E)
22) FRESH WATER PRODUCTION (DAILY):  ABT 20 MT/DAY
23) FW TANK CAPACITY: ABT 400 MT
24) TYPE MAIN ENGINE AND BHP: M.A.N. - B AND W 6S50MC (MARK 6)
25) ITF: NO
26) CO2 FITTED FOR HOLD:  NO
27) AUSSIE HOLD LADDERS: YES
28) EEIGHT OF STANCHIONS (PERMANENT/COLLAPSIBLE RESPECTIVELY) EACH HOLD:
N/A
29) STRENGTHENED FOR HEAVY CARGOES: YES
30) STRENGTH (MT/M2) ON TANK TOP:
H1/5 22MT/M2
H2/4 17 MT/M2
H3 25MT/M2
 DECK: 3,46 MT/M2 UPPERDECK EXCEPT BETWEEN HATCH ENDS
HATCHCOVERS: 1,75 MT/M2
FLOOR SPACE (M2) HOLD BY HOLD:-
31) PEDESTAL HEIGHT FROM WEATHERDECK: INMARSAT C TOP (46.324 M ABOVE
BOTTOM OF KEEL)
32) NATIONALITY OF OFFICERS/CREWS: ALL TURKISH
33) MASTER NAME: GUVEN COKDEGER


Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9^(TH) JANUARY, 2006

34) H AND M VALUE: USD 37,500,000
35) UNDERWRITERS: DEX SERV LTD
36) OWRS PNI CLUB: UK LONDON
37) H.OWRS/MANAGERS FULL STYLE/ADRESS:
H.OWNS: YASA SHIPPING AND TRADING INDUSTRY S/A – FULL STYLE SAME WITH
MANAGERS
MANAGERS: YASA SHIPMANAGEMENT AND TRADING S/A
FULL STYLE:
BULGURLU MAH. BODRUMI CAMI SOK. NO:6 34696 K.CAMLICA/ISTANBUL/TURKEY
TEL: +90 216 545 19 45
FAX: +90 216 545 19 50
38) WHERE BUILT/HOME PORT: TSUNEISHI, JAPAN/ISTANBUL
39) LAST DRY DOCK AND SPECIAL SURVEY: 03.09.2005
40) NEXT DRY DOCK AND SPECIAL SURVEY: 02.09.2008/28.10.2010
41) INMARSAT TLX/FAX/TEL:
CALL SIGN: TCBT
INM B TEL: 327100129
INM B FAX: 327100130
INM B TLX: 327100132
INM C TLX: 427116053
INM C E-MAIL: 427116053@LN.MAIL65.COM.SG
42) VESSEL CLASS: CLASS NK
43) LAST 5 CARGOES/TRADING AREA:
AGGREGATES/6 LEGS BETW. FUJAIRAH AND MESAIEED
CEMENT CLINKER/FM PIPAVAV TO FUJAIRAH
IRON ORE/FM HALDIA+VISAK TO MUMBAI
COAL/FM NEW PORT NEWS VIRGINIA TO HALDIA+VISAK
STEEL PRODUCTS/FM ST. PETERSBURG TO PHILADELPHIA
44) MAX CONSTANTS EXCL STORES:
ABT 250 MT
45) SMC/DOC ISSUE/VALID DATE:
SMC 04.03.2002/20.11.2006
DOC 04.03.2002/02.10.2006
46) DEADWEIGHT ON VARIOUS DRAFTS:
11,75/50,917
11,02/46,914
10,60/44,598
9,59/39,045
8,39/32,505
7,91/30,093
5,61/17,741

ALL DETAILS ARE ABT.

### Clause 68.    VESSEL'S DESCRIPTION (2)
Description of the vessel as per Clause 67 is mutually agreed to be continuing warranties for the duration
of this time Charter Party.

### Clause 69.    PILOTS AND HOLD LADDERS
Vessel to be equipped with pilots and hold ladders in accordance with Australian regulations.

15


Everwise
International Co. Ltd

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9TH JANUARY, 2006

### Clause 70.   WAR CANCELLATION
If war breaks out between any two or more of the following countries;

In the event of any warlike operation involving vessel's flag country, U.S.A., U.K., Russia., The Republic of China, France, Japan directly affecting vessel's trading under this Charter Party, both parties shall mutually discuss as to cancel or continue this Charter Party.

### Clause 71.
At first loading port, vessels holds to be clean, swept so as to receive Charterers intended cargo (Iron ore in bulk) in all respects free of salt, loose rust scale. (For your guidance, current cargo is Iron ore pellets.) And previous cargo residues to satisfaction of the independent surveyors should the vessel not be approved by the surveyors then the vessel to be placed off-hire from failure of inspections until vessel is fully accepted.

### Clause 72.   SMUGGLING
Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers' account, if caused by Charterers and/or persons appointed by Charterers, and to be for Owners' account if caused by Owners, Officers and/or crew and/or persons appointed by Owners.

### Clause 73.   DELETED.

### Clause 74.   RELEASE OF CARGO WITHOUT BILL OF LADING
Charterers' Bills of Lading or Standard BIMCO Seaway Bills to be used if required by Charterers.

Master and Owners to authorize Charterers and/or their agents to sign Bill of Lading for and on behalf of the Master, if so required by Charterers, who shall indemnify vessel and Owners from all consequences arising from Charterers and/or their agents signing Bills of Lading in conformity with the mate's receipts.

Neither the Charterers nor their agents shall permit the issue of any Bill of lading, way bill or other document evidencing a contract of carriage (whether or not signed) on behalf of the Owners or on the Charterers' behalf or on behalf of any Sub-Charterers incorporating where not compulsorily applicable the Hamburg Rules or any Legislation imposing liabilities in excess of Hague Visby Rules. Charterers shall indemnify Owners against any liabilities, loss or damage which may result from any breach of the provisions of this clause. No through or liner Bill of Lading to be issued.

In case the original Bill(s) of Lading are not available upon vessel's arrival at discharging port for any reason, the Master is to release the entire cargo to the Charterers order against presentation by Charterers of a Letter of Indemnity with wording as per Owners standard P.&I. Club form, signed by Charterers only. Discharge to commence on receipt by Owners of faxed copy of the Letter of Indemnity.

Should Charterers require vessel to change discharging port after Bill of Lading have been issued Owners to comply with such instructions upon receipt of a faxed copy of a single Letter of Indemnity signed by Charterers only and issued in conformity with Owners' standard P.&I. Club form.

It is understood that the Owners do not prefer original B/L on board vessel based on their P+I club advice however if such situation arises, Charterers request that both parties to discuss the situation in good faith and settle down the matter.

Charterers hereby warrant that they will take all necessary steps to comply in all respects with U.S. customs requirements requiring a unique bill of lading identifier on all waybills, Seaway bills, cargo manifests and Bill of Lading.

Seaway Bills for Japanese companies only to apply.



## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

### Clause 75.  COMMUNICATION WITH CREW
The Master, Chief Engineer and all deck Officers, including the Bosun are to be able to speak and understand English.

### Clause 76.  CABLE/VICTUALLING/ENTERTAINMENT
The vessel to be equipped with Inmarsat (telex) and facsimile transceiver, Charterers to pay Owners a lumpsum of USD1,300 per month or pro-rata to cover communications, victualling and entertainments expenses. Owners confirm vessel will be fitted with e-mail and fax on board.

### Clause 77.  LIGHTENING
With regard to lightening the following to apply.:

Vessel to lie alongside another vessel/coaster/lighters/floating cranes at a safe dock or wharf or place (including safe anchorage) for transshipment and/or loading and/or discharge of the cargo and/or for bunkering if so ordered by the port authority or when such operation is customarily carried out at the port. Such operation to be carried out always subject to good weather, smooth and calm sea, slight wind and current when Master thinks fit under the supervision of Master regarding the general safety, who may at any time order the other vessel/coasters/lighters/floating cranes away from his vessel or remove his own vessel at Charterers' time and expense including tug service if Master considers the double banking by ship's own propelling is risky, meanwhile Charterers to take normal customary precaution to Master's satisfaction for such operation.

Charterers to have the privilege of ordering vessel to come alongside another vessel or vice versa in order to transship, load or discharge the cargo or to supply bunkers at their convenience, however Charterers to supply extra fenders and/or securing materials if necessary and indemnify Owners/vessel against all cargo claims subsequent to such operation.

Charterers also to indemnify Owners from additional insurance premium as charged by vessel's insurers to cover additional risks for vessel, loss of hire and/or shipowners' liabilities if not well covered by Owners' ordinary coverage under P & I club arising from such operation and Charterers to give Owners due advance notice of their intention to perform such operation, advising approximate type and quantity of cargo involved, the other vessel concerned, destination of cargo and location of operation.

Charterers however to indemnify Owners from any damages to vessel, claim from the other alongside vessel and/or loss of hire resultantly incurred from the unsafety of the operation, and/or any omission occasioned by crew members of both vessels. Owners to closely cooperate in the event of claims against third parties to resolve same to our mutual benefit.

Any delay occasioned due to operation of ship-to-ship transfer of cargo which is not attributable to the vessel/Owners shall not be counted as off-hire.

### Clause 78.  U.S. SEA CARRIER INITIATIVE AGREEMENT (SCIA)
The Owners certify that they have entered in and signed with the U.S. Customs the SCIA on an individual basis or through an Association such as BIMCO, otherwise they warrant to take the necessary steps before vessel's delivery and to hold the Charterers harmless through the whole duration of the charter against any claim from U.S. Customs in respect of drugs which could be found on board.

However Charterers are liable to undertake the consequence if the cargo carried contained any drugs and/or drug-like products found on board, or the drugs and/or drug-like products to be placed on board the vessel by Charterers and/or Charterers' servants without the knowledge of vessel's Owners, Manager or Master.

### Clause 79.  RATES OF HIRE
Hire USD18,900-daily including overtime 15 days payable in advance.
Payment of hire shall be made in cash 15 days in advance to Owners' nominated bank account.

17


Everwise
International Co., Ltd

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

### Clause 80.   TAX CLAUSE

All taxes and/or dues on the vessel and/or cargo and freight arising out of cargoes carried or ports visited under this Charter Party shall be for Charterers' account.

U.S.Tax Reform 1986 Clause

Any U.S. Gross Transportation Tax as enacted by the United States Public Law 99-514 (also referred to as the U.S. Tax Reform Act 1986) including later changes and amendments, levied on income attributable to transportation under this Charter Party which begins or ends in the United States and which income under the laws of the United States is treated as U.S. source transportation gross income shall be reimbursed by Charterers.

### Clause 81.   SURVEY CLAUSE

A joint bunkers and condition on hire survey to be held by an independent surveyor formally agreed by both parties at the port of delivery or if mutually agreed at a most convenient and proximate time/place/port to delivery time/place/port.

The costs of the survey to be equally shared between Owners and Charterers.

A joint bunker and condition off-hire survey to be held by an independent surveyor formally agreed by both parties at the port of redelivery or if mutually agreed at the most convenient and proximate time/place/port to redelivery time/place/port.

The costs of the survey to be equally shared between Owners and Charterers.

### Clause 82.   U.S. TRADE – UNIQUE BILL OF LADING IDENTIFIER CLAUSE

The Charterers warrant that each transport document accompanying a shipment of cargo destined to a port or place in the United States of America or in the Republic of Korea shall have been endorsed with a unique Bill of Lading identifier as required by the U.S. Customs Regulations including subsequent changes, amendments or modifications thereto, not later than the first port of call.

Non compliance with the provisions of this Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.

Furthermore, all time lost and all expenses incurred including fines as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account.

### Clause 83.   DRUGS

In the event that prohibited drugs are found in cargo, equipment or other property loaded by Charterers, their servants or Agents, or are found on the person or in possession of or effects of Charterers, servants or Agents, Charterers shall remain responsible for all and any consequential fines and expenses including the detention of the ship. The ship shall not go off-hire as a result of the presence of the drugs, whether this be real or suspected unless such delay or detention is directly attributed to the Owners, master or crew.

### Clause 84.   PARAMOUNT CLAUSE IN BILLS OF LADING

The Charterers are obliged to ensure that any Bill of Lading to be used in respect of the voyage(s) contemplated and submitted to Master or to Agent(s) authorized to sign on Master's behalf contains whichever of the Paramount clauses set out hereunder is appropriate to the voyage(s) and to indemnify the Owners hereto in respect of all losses, costs and expenses resulting from failure to do so.
Either

Customary/General Paramount clause referring to Hague Rules and to Hague/Visby Rules if compulsorily applicable.

Or only when carriage is to and/or from a state which is a contracting party to the Hamburg rules following provisions will apply:

18



## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

This Bill of Lading shall have effect subject to any national law making the International Convention for the Unification of certain rules of law relating to Bills of Lading signed at Brussels on 25th August 1924 (the Hague rules) or the Hague rules as amended by the Protocol signed at Brussels on 23rd February, 1968 (the Hague/Visby rules) compulsorily applicable to this Bill of Lading. If any terms of this Bill of Lading be repugnant to that legislation to any extent, such terms shall be void to that extent but not further. Neither the Hague rules nor the Hague/Visby rules shall apply to this contract where the goods carried hereunder consist of live animals or cargo which by this contract is stated as being carried on deck and is so carried.

Save where the Hague or Hague/Visby rules apply by reason of a) above, this Bill of Lading shall take effect subject to any national law in force at the port of shipment or place of issue of the Bill of Lading making the united nations convention of the carriage of the goods by sea 1978 (The Hamburg Rules) compulsorily applicable to this Bill of Lading in which case this Bill of Lading shall have effect subject to the Hamburg rules which shall nullify any stipulation derogating therefrom to the detriment of the shipper or consignee.

Where the Hague/Visby or Hamburg rules are not compulsorily applicable to this Bill of Lading the carrier shall be entitled to the benefits of all privileges, rights and immunities contained in Articles 1 to VIII of the Hague, save that the limitation sum for the purposes of Article rule 5 of the Hague rules shall be GBP100.

### Clause 85.   GRAB DISCHARGE CLAUSE
Owners confirm vessel's grabs are able to lift Iron ore cargo, free of charge to Charterers for using same. Vessel's gear and grabs to be at Charterers full disposal if required for loading/discharging/lightening operations.

### Clause 86.   DEVIATION DUE TO ACCIDENT/BREAKDOWN
Should the vessel be put into any port other than those instructed by the Charterers by reason of accident or breakdown or for the purpose of landing any injured or sick Officer, including Master, or members of the crew, the port charges, pilotages and any other expenses including bunkers and loss of time shall be borne by Owners also should the vessel be put back whilst on voyage by way of the above mentioned reasons, the hire shall be suspended from the time of her putting back until she is again in the same or equidistant position from the destination and the voyage resumed therefrom.

### Clause 87.   VACCINATION
Owners to arrange at their expense that the Master, Officer and crew of the vessel hold valid vaccination certificates against cholera and yellow fever and smallpox if and where required throughout timecharter period.

Owners to comply for their account with all sanitary regulations at ports of call including water treatment of cholera where required.

### Clause 88.   GANGWAY/WATCHMEN
If ordered by the vessel for the Owners' account. If however shore gangway/watchmen are compulsory by port or local regulations, then cost to be for Charterers' account.

### Clause 89.   CARGO MONITORING
The vessel will be required to carry on board appropriate instruments for measuring concentrations of methane, oxygen and carbon monoxide, the PH value of hold bilge water sample and cargo temperature in the range of 0–100 degrees Centigrade without requiring entry into cargo space.

### Clause 90.   DELETED

19


Everwise
International Co. Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9ᵀᴴ JANUARY, 2006

### Clause 91.   STOWAWAYS CLAUSE

a)

i) The Charterers warrant exercise due care and diligence in preventing stowaways in gaining access to the vessel by means of secreting away in the goods and/or containers shipped by the Charterers.

ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the vessel shall remain on hire.

iii) Should the vessel be arrested as result of the Charterers' breach of charter according to sub clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the vessel is released and at their expense put up bail to secure release of the vessel.

b)

i) If, despite the exercise of due care and diligence by the owners, stowaways have gained access to the vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the owners' account and the vessel shall be off hire.

ii) Should the vessel be arrested as a result of stowaways having gained access to the vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all responsible steps to secure that, within a reasonable time, the vessel is released and at their expense put up bail to secure release of the vessel.

### Clause 92.   WEATHER BUREAU

Vessel's speed and consumption performance analysis will be carried out by Charterers for each voyage on an average basis after the end of each voyage for steaming periods (from pilot station to pilot station excluding manoeuvring steaming in confined waters/canals) under good weather and current conditions only as per vessel's description. Single days of voyages will not be analysed separately and will not be construed a basis for performance.

Charterers will not withhold any hire payment partially or wholly due to alleged under performance or over consumption during the course of the charter period unless amount has been agreed by Owners.

Evidence of weather conditions shall be taken from vessels deck logs and independent weather bureau's reports. In the event of consistent discrepancy between deck logs and independent weather bureau's reports, then both parties try to settle it amicably.

### Clause 93.   BULLDOZERS ETC.

Forklift trucks/bulldozers/grabs/magnets etc., shall be allowed to be used in the holds if necessary, provided always within the vessel's permissible load.

### Clause 94.   WARRANTIES

Owners warrant that the vessel:

is not blacklisted by Arab countries nor anywhere else within the agreed trading limits.

has not traded Cuba for the last 180 days, and Israel.

is eligible for bunkers in The United States of America, its territories and possessions, in accordance with directives from The United States Department of Commerce, Office of International Trade.

### Clause 95.   WEATHERTIGHT HATCHES

The Owners warrant that on vessel's delivery and throughout the currency of this Charter the vessel's hatch covers are weather tight. All hatches are to be carefully attended by the Crew to prevent leakage.



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO
## CHARTER PARTY DATED 9TH JANUARY, 2006

The Charterers have the option to perform hose/pressure/ultrasonic or similar tests on all hatches at any time during Charter Party subject to Owners' approval which shall not be unreasonably withheld.

### Clause 96.  LIEN

In the event that Charterers have a contractual or statutory right of lien over cargo carried on board for hire, freight, deadfreight or demurrage Owners shall co-operate with Charterers in exercising a lien over the cargo and shall retain possession of the cargo on their behalf and deal with the cargo on Charterers' instructions. This is to be carried out in Charterers' time and at Charterers' risk. Charterers to fully indemnify Owners for any consequences by carrying out Charterers' instructions.

### Clause 97.  DELETED

### Clause 98.  CHANGE IN APPLICABLE LAWS AND REGULATIONS

If the following circumstance affects the performance by Owners of this charter, Charterers and Owners shall discuss the situation in good faith to settle down the problem:

When the existing laws and regulations which apply to this charter contract have been changed or revised by the relevant authorities during the currency of this charter;

When any laws and regulations have come into force during the currency of this charter;

(Above will not be applicable for the vessel's technical specifications.)

### Clause 99.  ADDITIONAL FITTINGS

Charterers have the option to weld padeyes and/or sockets for stanchions on deck at Charterers' time and expense. Further Charterers are to repair possible damage to coating in wing tanks upon completion of welding, to masters' satisfaction. Charterers are to remove same prior redelivery which case Charterers are to repair possible damage to coating in wing tanks upon completion of welding, to Masters' satisfaction. However, Charterers have the option to redeliver without removing padeyes and/or sockets paying Owners USD 30 per padeye and USD 50 per socket.

Any welding to be carried out according to class requirements under the supervision of the Master. Vessel has 2 cement holes on every hatch cover.

### Clause 100.  CREW SERVICE

With reference to Clause 8 of this Charter Party "customary assistance" shall include but not be limited to;

All opening and closing of hatches, when and where required.
Raising and lowering of derricks and rigging cranes, if fitted, and/or gangways in preparation for loading and discharging.

Shaping up vessel's holds/hatches and cranes, if fitted, as much as possible prior arrival at loading and/or discharging places so as to immediately commence loading and/or discharging operations.

The above services shall be considered as a minimum and shall in no way be construed as an alternative to or reduction in the standard of services from Officers and crew required under this Charter Party.  Above services is subject to local/port regulations.

### Clause 101.  DECK CARGO

Charterers are permitted to load cargo on the vessel's deck and hatch covers to master's discretion provided that the permissible load on the deck/hatch covers are not exceeded that the stability of the vessel permits and that such cargo does not impair the seaworthiness or safe navigability of the vessel to master's satisfaction. All fittings required for deck or hatch cover cargo are to be provided and paid for by the Charterers who are to load/stow/dunnage/lash and secure such cargo in their time and their risk and expense. In the event that the vessel has to be put back or deviate or slow steam by reason of cargo shifting or being in need of re-stowing or re-securing during the voyage the vessel to remain on full hire and all cost for shifting and re-stowing and/or re-securing to be for Charterers' account. Any damage sustained as a result of carrying deck cargo to be for Charterers' account. Any deck cargo to be carried at Charterers'/shippers'/receivers' risk, responsibility and expense and all Bill(s) of Lading are to be endorsed

21



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9ᵀᴴ JANUARY, 2006

accordingly. Separate Bill(s) of lading are to be issued for deck cargo.

Charterers have the option to weld padeyes on deck at Charterers' time and expense which Charterers are to remove prior redelivery but Charterers have the option to redeliver without removing padeyes paying Owners USD 15 per padeye. Any welding to be carried out to class requirements under the supervision of the master and at his discretion.

### Clause 102.  LOADING OF STEEL

Steel cargoes to be sufficiently dunnaged/lashed/secured and unlashed/unsecured at Charterers' expense, risk and in their time by stevedores under the supervision of the Master and up to his satisfaction.

Both Owners and Charterers have the option to arrange for a pre-loading survey of the cargo.  Expenses incurred for such a survey to be shared equally by both parties.  In case the vessel is sublet to other Charterers, the cost to be split proportionately by all the concerned parties.

### Clause 103.  DELETED.

### Clause 104. Sale Option Clause

Owners to have the option to sell the vessel during the currency of this Charter Party with charter back but always subject to Charterers approval which not to be unreasonably withheld.  If Charterers do not approve of the buyer, sellers (Owners) to fully perform the balance of the charter as disponent Owners and to fulfill the Charter Party obligations.

### Clause 105.  CRANE DRIVERS

Charterers have the option to arrange crane drivers for loading or discharging operations who will stay onboard the vessel which will provide suitable resting / sleeping area as far as vessel's accommodations are available. Charterers to pay USD10 per crane driver per day to Owners covering suitable accommodation onboard and providing suitable meals.

### Clause 106.  STEEL PRODUCTS

Owners confirm that the vessel can load/stow/carry/discharge steel products HRC at 15 meter tons can be loaded 2 tiers with dunnages.

### Clause 107. DELETED.

### Clause 108. MAA ARBITRATION

All disputes arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London. Unless the parties agree upon a sole arbitrator, the reference shall be for a tribunal of two arbitrators, one to be appointed by each of the parties, who will have the power to appoint an umpire if they disagree. The arbitrators and the umpire shall be members of the London Maritime Arbitrators' Association or otherwise qualified by experience to deal with commercial shipping disputes.

The contract is governed by English law and there shall apply the arbitration's proceedings under this clause the terms of the London maritime arbitrators' association current at the time when the arbitration proceedings are commenced.

For disputes where the total amount claimed by either party does not exceed USD 25,000 the arbitration shall be conducted in accordance with the small claims procedure of the LMAA.

### Clause 109. CAN ALSO BE ADDED TO TRADING EXCLUSION
*NAABSA*

NAABSA as per NYPE clause 6 is allowed in Argentina, Brazil, Colombia and Sauda (Norway) maximum 1 (one) NAABSA voyage allowed during the currency of the c/p with respect to other ports/berths not named within this clause, charterers are to inform and satisfy owners in advance of intended port/berth where NAABSA is customarily performed by similar size ships.



## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

Owners approval of charterers request not to be unreasonably withheld.
Charterers option to break institute warranty limits but always subject to owners underwritor advance approval, and charterers to pay owners extra insurance premium as per voucher from owners underwriters. at no time is the vessel to be required to force ice or follow icebreakers without owners' prior approval.

### Clause 110. OVER PERIOD
Should the vessel on her last voyage under this cp be delayed and the maximum Charter thereby exceed, provided the delay is not caused by reasons which were reasonably foreseeable at the time the charterers gave orders/instructions for the last voyage, then the charterers shall have the use of the vessel to enable them to complete the voyage, hire for such excess period to be payable at the prevailing market rate in case the c/p rate is below the prevailing market rate, otherwise c/p rate to apply.

### Clause 111. CONSECUTIVE/COASTAL VOYAGES:
Consecutive voyages for all cargoes (especially limestone/aggregates in pg and coal in Indian coastal trade and likewise) are allowed but only for 1 consecutive voyage which means 2 voyages in total.

### Clause 112. BALLASTING / DE-BALLASTING CLAUSE
A) Charterers to allow master, to take heavy ballast to the vessel at his discretion by flooding cargo hold at clean sea waters and by stopping the vessel as the ballast exchange manual does not permit heavy ballasting under way.
B) It will take about 20 hours to de-ballast the vessel (in normal ballast condition) during speedy cargo loading in areas like south Africa, Australia etc.

### Clause 113.
Arbitration in London and English law to apply.

### Clause 114. BOTTOM FOULING
Owners will not be responsible when bottom fouling in resulting from a prolonged stay in port/anchorage and/or idling for a running period under Charterers arrangements and orders.

Owners are not responsible for reduced speed and/or increased bunker consumption due to fouling from a long port stay .

### Clause 115. U.S. SECURITY
If the vessel calls in the United States, including any U.S.

Territory, the following provisions shall apply with respect to any applicable security regulations or . measures ;

Notwithstanding anything else contained in this charter party all costs or expenses arising out of or related to security regulations or measures required by any U.S authority including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterer's account, unless such costs or expenses result solely from the Owner's negligence

### Clause 116.    U.S. CUSTOMS 24 HOURS RULE
a) If loading cargo destined the us or passing through us ports in transit, the Charterers shall:

(i) provide all necessary information, upon request by the owners, to the owners and/or their agents to enable them to submit a timely and accurate cargo declaration directly to the us customs; or

(ii) If permitted by us customs regulations (19 CFR 4.7) or any subsequent amendments thereto, submit a cargo declaration directly to the us customs and provide the owners with copy thereof.

In all circumstances, the cargo declaration must be submitted to the us customs latest 24 hours in advance of loading.



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

b) The Charterer assume liability or and shall indemnify, defend and hold harmless the owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, Arising fm the Charterers' failure to comply with the provisions of sub-clause (a)

c) If the vessel is detained, attached, seized or arrested as a result of the Charterers' failure to comply with the provisions of sub-clause (a), the Charterers shall provide a bond or other security to ensure the prompt release of the vessel. notwithstanding any other provision in this charter party to the contrary, the vessel shall remain on hire.

### Clause 117.   Winch Breakdown

In the event of breakdown of a crane or cranes by reason of disablement or insufficient power, the hire to be reduced pro-rata for the period of such inefficiency in relation to the number of crane(s) available but only if cargo operations are actually affected. Owners to pay in addition the substantiated cost of labour either idle or additionally engaged, because of the breakdown. This does not exempt Owners from liability for the cost of hiring shore appliances, if required by Charterers, in accordance with Clause No.23. If shore appliances are hired by Owners the hire of the vessel to be paid in full deducting actual time lost by breakdown. Should the final completion of the load/discharge be delayed when cargo is to be completed or remaining in only one hold due to breakdown of crane(s) at those hatches and if the deficiency is not rectified within one hour of occurrence, then the entire vessel to be off-hired however, if the Owners at their option to provide a shore crane at their cost, then the time to count in full and vessel shall remain on hire."

\*\*\* E N D \*\*\*

24



Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9ᵀᴿ JANUARY, 2006

### NEW BOTH TO BLAME COLLISION CLAUSE

If the vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the carrier in the navigation or in the management of the vessel, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying vessel or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which or for the consequence of which the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

### GENERAL CLAUSE PARAMOUNT (1982) IN BILLS OF LADING ONLY

With respect to the shipment, carriage and discharge of the cargo, whether or not this Bill of Lading regulates the relations between the carrier and holder of same, this Bill of Lading shall have effect subject to the provisions of any legislation incorporating the Rules contained in the International Convention for the Unification of Certain rules of Law relating to Bills of Lading dated Brussels August 25ᵗʰ 1924 (the Hague rules) or those rules as amended by the Protocol signed at Brussels February 23ʳᵈ 1968 (the Hague Visby rules) and which is compulsorily applicable to the contract of carriage contained herein. If no such legislation is compulsorily applicable, the Hague rules or, if applicable, the Hague Visby rules as enacted in the country of the port of loading shall apply. When no such enactment is in force in the country of the port of loading, the corresponding legislation in the country of the port of discharge shall apply and in the absence of any such legislation, the terms of the 1924 Convention as amended by the 1968 Protocol shall apply.

25


Everwise
International Co., Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

### BIMCO Standard War Risk Clauses for Time Charters 1993
### Code Name "CONWARTIME 1993"

For the purpose of this Clause the words:

"Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel and the Master and

"War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group or the government of any state whatsoever which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through any port, place, area or zone (whether of land or sea) or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners may be, or are likely to be, exposed to war risks. Should the vessel be within any such place as aforesaid which only becomes dangerous or is likely to be or to become dangerous after her entry into it, she shall be at liberty to leave it.

The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

The Owners may effect war risks insurance in respect of the hull and machinery of the vessel and their other interests (including but not limited to loss of earnings and detention, the crew and their Protection and Indemnity risk) and the premiums and/or calls therefor shall be for their account.
If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within or is due to enter and remain within any area or areas which are specified by such Underwriters as being subject to additional premiums because of war risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

The vessel shall have liberty:

to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any other way whatsoever which are given by the government of the nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

to comply with the terms of any resolution of the Security Council of the United Nations, any directives of



## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

the European Community, the effective orders of any other Supernational body which has the right to issue and give the same and with national laws aimed at enforcing the same to which the Owners are subject and to obey the orders and directions of those who are charged with their enforcement;

to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier.

to divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

If in accordance with their rights under the foregoing provisions of this Clause the Owners shall refuse to proceed to the loading or discharging ports or any one or more of them, they shall immediately inform the Charterers.  No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge.  Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

If in compliance with any of the provisions of sub-clause (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

### US Customs Advance Notification/AMS Clause for Time Charter Parties :

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR, 4,7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense :

i) Have in place a SCAC (Standard Carrier Alpha Code);
ii) Have in place an ICB (International Carrier Bond);
iii) Provide the Owners with a timely confirmation of i ) and ii) above; and
iv) Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a).  Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the Vessel shall remain on
hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers
for those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4,7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

### ISPS Clause for Time Charter Parties

(a)(i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) or any local law, legislation or regulation of the flag of the vessel or places called at by the vessel (all referred to hereafter jointly as "THE ISPS CODE")in relation to the Vessel and thereafter during the currency of this Charter Party, the

27


Everwise
International Co. Ltd.

## ADDITIONAL CLAUSES TO M.V. "YASA AYSEN"/FARENCO CHARTER PARTY DATED 9TH JANUARY, 2006

Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b)(i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners":

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d)If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

(e) Charterers guarantee that the ports to which they direct the vessel comply at all times while the vessel is at the port with all requirements of the ISPS Code. Owners are entitled to refuse to proceed to a port not complying with the ISPS Code. All costs and consequences arising from or in connection with calls at ports not complying with the ISPS Code to be for Charterers' account.



# EXHIBIT 2

# STATEMENT OF FACTS

Date :   23'  January, 2006

## SUBJECT TO TERMS, CONDITIONS AND EXCEPTIONS OF RELEVANT CHARTER PARTY

## M.V.  YASA AYSEN

| | | | | | |
|---|---|---|---|---|---|
| Vessel Arrived Panjim Port | at | 1830 | hours | on | 15th  January, 2006 |
| Free Pratique Granted | | | ARRIVED IN PRATIQUE | | |
| Vessel Anchored | at | 1830 | hours | on | 16th  January, 2006 |
| Notice Of Readiness Tendered | at | 1830 | hours | on | 15th  January, 2006 |
| Notice Of Readiness Accepted | at | 1830 | hours | on | 16th  January, 2006 |
| Initial Draft Survey Commenced | at | 0645 | hours | on | 17th  January, 2006 |
| Initial Draft Survey Completed | at | 0745 | hours | on | 17th  January, 2006 |
| Loading of Cargo Commenced | at | 1145 | hours | on | 17th  January, 2006 |
| Loading of Cargo Completed | at | 1155 | hours | on | 22nd  January, 2006 |
| Final Draft Survey Commenced | at | 1215 | hours | on | 22nd  January, 2006 |
| Final Draft Survey Completed | at | 1315 | hours | on | 22nd  January, 2006 |
| Vessel Sailed | at | 1745 | hours | on | 22nd  January, 2006 |

Vessel provided 4 x 38 T Cranes fitted with Grabs to load the cargo of Iron Ore Fines in bulk
in Hold / Hatch No. 1, 2, 3, 4 & 5.

Total  Quantity loaded as per Ship's Draft :          51,050      Metric Tons of  Iron Ore Fines in Bulk

Sunday and  Legal Port  Holidays while  Vessel in  Port :
Sunday                              :    22nd January, 2006
Holiday                             :    NIL

Shifting :                          Nil

Stoppages :

| | | |
|---|---|---|
| 17.01.2006 | 1225 hrs to 2400 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| 18.01.2006 | 0000 hrs to 0135 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| " | 1125 hrs to 1630 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| " | 1900 hrs to 2400 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| " | 0945 hrs to 2400 hrs | 1 Grab Out of Order. |
| 19.01.2006 | 0000 hrs to 2400 hrs | 1 Grab Out of Order. |
| " | 1525 hrs to 2400 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| 20.01.2006 | 0000 hrs to 0300 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| " | 0330 hrs to 0445 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| " | 1050 hrs to 1150 hrs | Loading suspended due to Heavy Seas and Rolling of Vessel. |
| " | 0000 hrs to 2400 hrs | 1 Grab Out of Order. |
| 21.01.2006 | 0000 hrs to 1550 hrs | 1 Grab Out of Order. |

... 2 ...

Shipper's Remark :-

Notice of Readiness tendered at 1830 hours on 16th January, 2006 and accepted as per the Terms, Conditions and Exceptions of the Sale Contract No.RAM/SUN/05/03 dated 21st December, 2005 and its addendum.

From 0345 hours on 18th January, 2006 till 1500 hours on 21ST January, 2006 Vessel's One Grab under breakdown.

Master's Remark :

No Delays on Vessel's account.

Notice of Readiness tendered at 1830 hrs on 16th January, 2006 and deemed to be accepted at tendered date and time, as per the Terms and Conditions of the Charter Party.

Absence of grab No.1 did not effect the loading rate and the time of completion.

Final draft survey taken in 1.5 to 2.0 mtre swell.

For M/s. Machado & Sons Agents
& Stevedores Private Limited

Shipper's Agents

M/s. GAC Shipping (India)
Pvt. Ltd.

As Agents

MASTER
M.V. YASA AYSEN

M/V YASA AYSEN
★ ISTANBUL ★

# EXHIBIT 3



KOREA LINE CORPORATION
Daeil Bldg, #43, Insa-Dong, Chongno-Gu, Seoul, Korea 110-290
TEL (02) 3701-0114  FAX (02) 723-1610  TLX K-27235, 24206

ABT 25/30 DAYS

STATEMENT OF ACCOUNT

BROKER : EVERWISE
MESSRS : FARENCO SHIPPING CO LTD BV :   RE : STATEMENT OF ACCOUNT
VESSEL : MV YASA AYSEN              VOYAGE  2

DATE :    15-Sep-05
C/P DATE :      09-Jan-06
(UNIT : US$)

| NO | | DESCRIPTION | | | | | | Dr | Cr |
|----|---|---|---|---|---|---|---|---|---|
| 1 | FROM | 12:30 GMT | 2006/01/15 | | | | | | |
| | TO | 2:30 GMT | 2006/02/13 | | | | | | |
| | ON-HIRE | 28.583333 DAYS | X USD | 18,900.00 = USD | 540,225.00 | | | 540,225.00 |
| 2 | 3.75 PCT ADD. COMM. | | | | | | 20,258.44 | |
| | 1.25 PCT BROKERAGE TO OCEAN LAND | | | | | | 6,752.81 | |
| 3 | B.O.D. | | | | | | | 215,421.97 |
| | IFO : | 608.239 | MT | X | USD | 310.00 = USD | 188,554.09 | | |
| | MDO : | 51.669 | MT | X | USD | 520.00 = USD | 26,867.88 | | |
| 4 | B.O.R. | | | | | | 204,590.00 | |
| | IFO : | 587.000 | MT | X | USD | 310.00 = USD | 181,970.00 | | |
| | MDO : | 43.500 | MT | X | USD | 520.00 = USD | 22,620.00 | | |
| 5 | CABLE/ENTERTAINMENT/VICTUALLING | | | | | | | 1,221.64 |
| 6 | I.L.O.H.C. | | | | | | | 5,000.00 |
| 7 | ON-HIRE SURVEY | | | | | | | 200.00 |
| | OFF HIRE SURVEY | | | | | | 600.00 | |
| 8 | EST D/A | | | | | | 0.00 | |
| 9 | ACT.D/A | (V-2) | AT | HARIZA | USD | 0.00 | 0.00 | |
| | | | | PANJIN | USD | 0.00 | | |
| | | | | SINGAPORE | USD | 0.00 | | |
| | | | | JINTANG | USD | 0.00 | | |
| | | | 2.5 PCT COMM | | USD | 0.00 | 0.00 | |
| 10 | REMITTED FROM CHARTERERS | | | 1st | USD | 344,966.10 | 344,966.10 | |
| | | | | 2nd | USD | 41,742.01 | 41,742.01 | |
| | | | | 3rd | USD | 89,753.13 | 89,753.13 | |
| | | | | 4TH | USD | 33,227.74 | 33,227.74 | |
| | | | | 5TH | USD | 21,236.80 | 21,236.80 | |
| | | | S. TOTAL | | | | 743,127.03 | 762,068.62 |
| | | | BALANCE DUE TO OWNS | | | | 18,941.59 | |
| | | | G. TOTAL | | | | 762,068.61 | 762,068.62 |

D. N. HEO
GENERAL MANAGER
TRAMPER TEAM 3

# EXHIBIT 4

Τιμε Χηαρτερ
GOVERNMENT FORM
Approved by the New York Produce Exchange
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1   Τηιο Χηαρτερ Παρτψ, made and concluded in ...Beijing... ... ... ... ... ... ... ... ... ... ... ... ...28th... ... ... day of ...June.. 2005... ..
2   between Korea Line Corporation... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...Charterers of the City of ...BVI
3   Owners of the good...Indian flag... ... ... ... ...Steamship/Motorship .. "GOA" ... ... ... ... ...et... ... ... ... ... ... ... ...
4   of... ...26,029. ... ...tons gross register, and... ...16,154.... ... ... tons net register, having engines of... ... ... ... ...indicated horse power
5   and with hull, machinery and equipment in a thoroughly efficient state, and classed BV/125... ... ... ... ... ... ... ... ... ... ...
6   at ... ...54,671/51,937 ... ...of about... ... ...cubic feet meters grain/ bale capacity, and about 45,744 metric ... ...tons of 2240 lbs.
7   deadweight capacity (cargo and bunkers, including fresh water; and also not exceeding one and one half percent of ship's deadweight capacity)
8   allowing a minimum of fifty-tons) on a draft of...13.832 meters,..feet...metres on...salt...Summer water freeboard, inclusive of permanent bunkers,
9   which are of the capacity of about... ... ... ... ... ... ... ... ... ...tons of fuel, and capable of steaming, fully laden, under good weather
    (means upto and including beaufort force 4)
10  conditions about...13...... knots on a consumption of about...27.8... ... ...tons of IFO + 0.5 MT MDO (for description, See Clause 31) best
    Welsh coal best grade fuel oil best grade Diesel oil),
11  now trading ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...
12  ... ... ... ... ... ... ... ... ...and ... ... FAREMCO SHIPPING CO., LTD... ... ... ... ...Charterers of the City of ...BVI
13  Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14  about   one time charter trip via safe port(s), safe berth(s), always afloat, always within international
15  warrant limits with a cargo of harmless metcoke / coal only via China to India, duration about 25-29 days without
    guarantee... ... ... ... ... ... ... ... ... ... ... ... ...within below mentioned trading limits.
16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17  the fulfillment of this Charter Party.
18  Vessel to be placed at the disposal of the Charterers, at   on dropping last outward sea pilot one safe port Lianyungang
19  at any time day or night Sundays and holidays included. ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...
20  in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6) as
21  the Charterers may direct, if such dock, wharf or place is not available time to come as provided for in clause No. 6. Vessel on her delivery to be
22  ready to receive permissible cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and
23  donkey-boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the vessel's cargo gear winches
    at one and the same
24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), throughout the period of this Charter
    vessel to be employed, in carrying lawful merchants
25  thee, including petroleum or its products in proper containers, excluding ... ... ... ... ... ... ... ... ... ... ... ...
26  (vessel is not to be employed in the carriage of Live Stock but Charterers are to have the privilege of shipping a small quantity on deck at Charterers
27  all necessary fittings and other requirements to be for account of Charterers); it such lawful trades, between safe port and/or ports in British North
28  America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or gulf of Mexico, and/or
29  Mexico, and/or South America... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...and/or Europe
30  and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31  October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, (Black Sea and the Baltic,
32  Trading exclusions – See Clause 61 ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...
33  ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...
34  ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...
35  as the Charterers or their Agents shall direct, on the following conditions:
36  1 That the Owners shall provide and pay the for all fresh water, lubricating oil and provisions, wages, including all officers and crews
    overtime and coastal shipping and discharging fees of the Crew; shall pay for the
37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38  the vessel in a thoroughly efficient state in hull, machinery and equipment with all inspection certificates necessary to comply with all current
    requirements at ports of call for and during the service.
39  2 That whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotages, where vessel's of
    similar size customarily take pilots, Agencies, for clearance and cargo work only (See Clause 45), Commissions,
40  Consular Charges (except those pertaining to the Crew and flag), and all other usual expenses except those before stated, but when the vessel puts into
41  a port for causes for which Owners are vessels responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42  illness of the crew to be for Owners account. Fumigations ordered because of cargo carried or ports visited while vessel is employed under this
43  charter to be for Charterers account. All other fumigations to be for Charterers account or have been on charter for a continuous period
44  of six months or more.
45  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel if any. Charterers to have the privilege of using shifting boards

47  for demurrage, they making good any damage therein.

48  3. That the Charterers at the port of delivery and the Owners at the port of re-delivery, shall take over and pay for all fuel remaining on

49  board the vessel at the current prices in the respective ports the vessel to be delivered with not less than ................................ tons and not more than

50  .................. tons and to be redelivered with not less than ......... ... ........tons and not more than ......... ........tons

51  4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of US$ 14,500 daily including overtime, hire paying

52  first 15 days hire and estimated bunkers consumption value to be paid within 3 banking days after delivery. Additional
    hire for estimated time remaining to redelivery to be paid in advance and thereafter balance hire and any difference
    between bunkers on delivery / redelivery to be settled immediately after vessel's redelivery ............. ...United States Currency
    per ton on vessel's total deadweight carrying capacity including bunkers and

53  stores, on ........ ...... ..... ... ............summer-freeboard, per Calendar Month, commencing on and from the time/day of her delivery, as aforesaid and so

54  and after the same rate for any part of a day month, hire to continue until the hour of the day of her redelivery in like good order and condition,
    ordinary

55  wear and tear excepted, to the Owners (unless lost) at not dropping last outward sea pilot one safe port India port in charterers option

56  any time day or night Sundays and Holidays included inention WC. India. ... ... ... ..... unless otherwise mutually agreed. Charterers are to
    give Owners 10/7.5 days approximate and no less than ...... 3/2/1 days definite

57  notice of vessels expected date of re-delivery, and probable port. Charterers to keep Owners advised of vessel's movement and notify
    Owners immediately of unforeseen delays.

58  5. Payment of said hire to be made in See Clause 29 New York in cash in United States Currency, every 15 days semi monthly in advance, and
    for the last half month 15 days or

59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance, day by day, as it becomes

60  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from 7 a.m. on the working day

63  following that on which notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers they

64  to have the privilege of using vessel at once such time to count as actual time.

65  Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain by the Charterers or their Agents, subject

66  to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67  of such advances

68  6. That the cargo or cargoes be laden and/or discharged in any safe dock or at any safe wharf or safe place that Charterers or their Agents may

69  direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70  lie aground.

71  7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72  accommodation for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73  tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodation allows, Charterers

74  paying owners .. .. ...per day per passenger for accommodation and meals. However, it is agreed that in case any fines or extra expenses are

75  incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense No passengers.

76  8. That the Captain shall prosecute his voyages with the utmost dispatch, and shall render all customary assistance with ship's crew and

77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards vessel's employment and

78  agency; and Charterers are to load, stow, and trim tally, lash, unlash, secure and discharge the cargo at their expense under the supervision of the
    Captain, who is to sign Bills of Lading for

79  cargo as presented, in conformity with Mate's or Tally Clerks receipts unless Charterers are making use of their authority to sign as per
    Clause #6.

80  9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82  10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83  with the utmost dispatch. He is to be furnished with free and unavailable accommodation, and same fare as provided for Captain's table, Charterers paying
    at the

84  rate of $14.00 $15.00 per day Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to signal Tally

85  Clerks, Stevedore's Foreman, etc., Charterers paying in the current rate per meal, for all such victualling, as per Clause 69.

86  11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87  Captain shall keep a full and correct log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88  terers, their Agents or Supercargo, when required, with legible deck and engine a true copy of daily Logs in English language, showing the course
    of the vessel and distance run and the con-

89  sumption of fuel.

90  12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91  13. That the Charterers shall have the option of continuing this charter for a further period of.. ...... .. ... ... .. . ... ....... ...

92  .................. ... ..... .... ........ ...... ... ... .... ...

93  on giving written notice thereof to the Owners or their Agents ... .... ... ...days; previous to the expiration of the first named term, or any desired option.

94  14. That if required by Charterers, time not to commence before 29th June, 2005.... ... ... .. ............... ... ......and should vessel

95  not have given written notice of readiness delivered on or before 4th July, 2005. ... ... ............but not later than 4 pm Charterers or

96  their Agents to have the option of canceling this Charter at any time not later than the day of vessel's readiness

97  15. That in the event of the loss of time from deficiency and/or default of men or stores, fire, breakdown or damages to hull, machinery or

equipment,

98  grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99  preventing the full working of the vessel, the payment of hire shall cease for the *actual* time thereby lost, and if upon the voyage the speed be reduced by

100  defect in or breakdown of any part of her hull, machinery or equipment, the actual time so lost, and the cost of any extra fuel consumed in consequence

101  thereof, and all *directly related and supported with evidences* extra expenses shall be deducted from the hire *Any stevedore and/or harbour charges for breakdown of vessel's equipment not caused by the Charterers or their agents or stevedores to be for Owners account.*

102  16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104  Rivers, Machinery, Boilers and Steam-Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105  The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106  purpose of saving life and property.

107  17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at *London New York*,

108  one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

109  the purpose of enforcing any award, this agreement may be made a rule of the Court. The arbitrators shall be *shipping commercial men conversant with shipping matters and members of the LMAA. (See Clause 50).*

110  18. That the Owners shall have a lien upon all cargoes, and all sub-freights and/or sub-hire for any amounts due under this charter, including General Avar-

111  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112  deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113  might have priority over the title and interest of the owners in the vessel.

114  19. That all deratics and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115  crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

116  York Antwerp Rules 1924 *1974) 990 or any subsequent amendments in London,* ~~at such port or place in the United States as may be selected by~~

117  ~~the master, and as to matters not provided for by these~~ ...

[lines 117-132 heavily struck through / illegible]

133  20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the

134  cost of replacing same, to be allowed by Owners.

135  21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136  ~~convenient place, before ordered and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137  ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~ *Vessel not to be drydocked while performing this Charter Party unless in case of emergency.*

138-139 ...

140  22. Owners shall maintain the gear of the ship as fitted, providing gear (for all cranes derricks) capable of handling lifts *as specified in Clause*

141  *31.* Owners also to provide on the vessel electric light for night work as on board at all hatches simultaneously, free of charge to the Charterers up to three tons, also

142  ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

143  ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lamps and oil for~~

144  ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board, to be at Charterers' expense. The~~

145  ~~Charterers to have the use of any gear aboard the vessel.~~

146  23. Vessel to work night and day, Sundays and holidays included, if required by Charterers, and all *cargo gears to be at Charterers'*

147  *disposal at all times simultaneously during loading and discharging operations* winches to be at Charterers' disposal during loading and discharging

148  ~~steamer to provide on winches per hatch to work winches day and night, as required, Charterers agreeing to pay efficient engineers, winchmen,~~

149  ~~cost heads and deckaymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the crew of the~~

[remaining struck-through lines illegible]

150    thereby. *See Clause 51.*

151    ~~24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~

152    ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and ended "An Act relating to Navigation of Vessels,~~

153    ~~the Bill of Lading, of all property carried under this charter to or from the United States of America. It is further subject to the following clauses, both~~

154    ~~of which are to be included in all bills of lading issued hereunder:~~

155                         ~~U.S.A. Clause Paramount~~

156    ~~This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~

157    ~~16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the carrier of~~

158    ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~

159    ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160                         ~~Both-to-Blame Collision Clause~~

161    ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~

162    ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~

163    ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~

164    ~~or liability represents loss of, or damage to, or any claim whatsoever of the owner of said goods, paid or payable by the other or non-~~

165    ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~

166    ~~owners as part of their claim against the carrying ship or carrier.~~

167    25. The Vessel shall not be required to enter any ice-bound port, or any port where lights or lightships have been or are about to be with-

168    drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169    port or to get out after having completed loading or discharging. *See also Clause 61 paragraph 4*

170    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

171    navigation of the vessel, *acts of pilots and tugboats* insurance, crew, and all other matters, same as when trading for their own account.

172    27. A commission of 1.25 % per cent is payable by the Vessel and Owners to *Ocean Lead Shipping Co., Ltd*

173    *plus 1.25% to K.Chorus Shipping Co., Ltd, Seoul.* .....................................................................................

174    on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175    28. An address commission of 2¼  3.75 per cent payable to *Charterers* .... on the hire earned and paid under this Charter.

*Clauses 29 through 104 both inclusive, as attached, are to be fully incorporated in this Charter Party.*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form.

THE CHARTERERS :                           THE OWNERS :

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

### Clause 29. HIRE PAYMENT CLAUSE

Hire Payment details:

HANA BANK, CHUNGANG CORPORATE CENTER BRANCH
SWIFT CODE:HNBNKRSE
A/C NO: 100-265678-00232
VIA CITI BANK, NEW YORK
SWIFT CODE: CITIUS33
ABA NO. 021000089
IN FAVOUR OF: KOREA LINE CORPORATION

A first 15 days hire along with the value of bunker on delivery to be remitted to Owners nominated bank account, upon vessels delivery and Charterers receipt of fax/emailed invoice and relevant invoice in Seoul. Charterers are entitled to deduct from last sufficient hire payments estimated bunkers on redelivery value. Owners protecting agents will take care of Owners husbandry matter at all ports of call.

B.   Where there is any failure to make punctual and regular payment due to oversight or negligence or error or omission of Charterers' employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners 72 (seventy-two) hours written notice to rectify the failure, and where so rectified, the payment shall stand as punctual and regular payment. If there is failure of bank, Charterers to have 2 (two) working days grace to rectify the failure.

C.  In the event that the vessel is expected to be redelivered to the Owners prior to the expiry of the last 15 (fifteen) days period that would be covered by the next payment of hire, Charterers shall be entitled to effect payment of hire on the basis of the estimated time necessary to complete the service.

D.  In the event that the Master requests delivery of cash money at the vessel, expenses involved in arranging and making such delivery of cash money to the vessel shall be borne by the Owners.

### Clause 30.

Bunkers on delivery: IFO about 750/850 metric tons and MDO about 90/130 metric tons. Bunker on redelivery to be about the similar quantities as on delivery. Bunker prices USD280 PMT for IFO 380 CST and USD530 PMT for MDO.

If RME 25 is not available in South Africa and South America so Charterers option to stem grade RMF 25 available, Charterers to bunkers vessel with fuel to ISO 8217 standards.

Charterers to pay for bunkers on delivery together with first hire payment.

Charterers may allow Owners to replenish bunker at their expenses/risk at last load port/ disport. Such bunkering does not interfere Charterers operation/vessel's cargo intake and draft restrictions allow.

The Charterers shall supply bunkers of a quality suitable for burning in the vessel's main engines and auxiliaries and which confirm to the specifications as set out below: -

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

Spec: - ISO/DIS: 8217:1996A, grade RMG 35(IFO 380CST) and DMB (MDO) the Owners reserve their right to make claim against the Charterers during the currency of the Charter period and/or after completion of Charter period for direct/relevant proven damage to the main engines and auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specifications. Further, if the fuels supplied do not conform to the mutually agreed specifications or otherwise prove unsuitable for burning in the vessel's main engine and auxiliaries, the Owners shall not be held responsible for any reduction in the vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.

The Charterers to provide certificate/bunker delivery report from the supplier prior to / at the time of supply indicating the specifications of the fuels and all other details as stipulated in Marpol VI regulation. The sample of the bunker will be taken to the laboratory for verifications. The Charterers shall indemnify, defend and hold harmless Owners in respect of any loss, liability, delay, fines, costs, or expenses arising or resulting from the Charterers failure to comply with this clause. Fuel sulphur content clause for time Charter Parties notwithstanding anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the vessel, at all times, to meet the maximum sulphur content requirements of any emission control zone when the vessel is trading within that zone. The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this clause. For the purpose of this clause, "emission control zone" shall mean zones as stipulated in Marpol Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US environmental protection agency."

### Clause 31. VESSEL'S DESCRIPTION

MV GOA
 .. .. ..
45.744MT DWT ON 11.822M
SDBC GRD BLT 1998
INDIAN FLAG
LOA 193.432 M /BEAM 30.392M
HO/HA 5/5
GRAIN 54671 CBM
SIDE ROLLING HATCH COVERS
CRANES 4 X 25MT SWL CRANES SERVING ALL HOLDS
(VESSEL FITTED WITH 5 X 25 MT SWL CRANES)
GRABS 4 X 8 CBM EACH - SUITABLE FOR COAL / METCOKE CARGO ONLY
AND ANY CASE IF CHARTERERS INTEND TO USE SHORE GRABS THEN THEY ARE
TO ENSURE THAT THE WEIGHT OF SUCH SHORE GRABS PLUS THE WEIGHT OF THE
CARGO WILL NOT EXCEED 18 MT.

TPC ABT 52.30MT
HA/SIZES:
HOLDWISE GRAIN/BALE CAPACITIES
TOTAL GRAIN CAPACITY : 54670.7 CBM
holdwise GRAIN CBM 9955.6 / 11468.0 / 11380.3 / 11346.6 / 10515.2
TOTAL BALE CAPACITY: 50298.0 CBM
holdwise BALE CBM 9163.0 / 10551.0 / 10470.0 / 10459.0 : 9675.0
 L 19.2 X 12.8 M

2

Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

2-5 19.2 X 14.4 M
ABT 13K ON ABT 27.8 MT IFO 380 CST + 0.5 MT MDO
IDLE/WORKING 3 MT MDO / 3.5 MT MDO
DETAILS ALL ABOUT

- PLS NOTE VSLS GRABS ARE SUITABLE FOR COAL / METCOKE CGO ONLY
  (NO ORE)

- FULL AND COMPLETE T/C DESCRIPTION AS PER CHARTERERS QUESTIONNAIRE
  WHICH TO BE INCORPORATED IN AND FORM PART OF THE C/P.

- OWNERS CONFIRM THAT THE VESSEL IS FULL P AND I COVERED FOR THE
  DURATION OF C/P AND THAT THE P AND I CLUB IS A MEMBER OF THE
  INTERNATIONAL GROUP OF P AND I CLUBS.

- CHARTERS QUESTIONNAIRES:

1) NAME : MV GOA
2) BUILT: JAN 1998
3) FLAG : INDIAN
4) TYPE : SDBC
5) DWAT AND DRAFT IN
   SUMMER SALT : 45,801 MT ON 11.822M
   WINTER SALT : 44519 MT ON 11.576 M
   TROPICAL SALT: 47090 MT ON 12.068 M .
6) TPI/TPC : 132.84 /52.3
7) LOA: 193.430 M
8) BEAM: 30.392 M / DEPTH:16.390
   (9946 / 11468 / 11380 / 11346 / 10516 CBM
10) NUMBER OF HOLD/HATCHES : 5/5

11) HOLDS SIZE (L X W X H)
    NO  LENGTH(M)  BREADTH(M)  HEIGHT(M)
    1   28.6       20.4        14.80
    2   28.0       22.4        14.80
    3   27.6       22.4        14.80
    4   27.6       22.4        14.80
    5   27.6       19.2        14.80

    TANK TOP DIMS: CLEAR TANKTOP DIMS
    HOLD NO.  LENGTH(M)  BREADTH(M)
                         FWD   AFT
    1   25.25     12.16  22.23
    2   22.58     22.23  22.23
    3   23.67     22.23  22.23
    4   23.67     22.23  22.23
    5   25.28     22.23  16.39

3

Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

12) HATCH SIZE (L X W)
    NO  LENGTH(M)  BREADTH(M)
    1   19.20    12.80
    2   19.20    14.40
    3   19.20    14.40
    4   19.20    14.40
    5   19.20    14.40

13) TYPE OF HATCH COVERS:
    SIDE ROLLING TYPE (RACK & PINION), McGREGOR
14) WATERLINE TO TOP OF HATCHCOAMING
    FULL BALLAST AND NORMAL FUEL CONDITION: 13.50 MTRS
15) GEAR CAPACITY: CRANES 4 X 25 MT SWL (BLM MAKE)
    (VSL FITTED WTH CRANES 5 X 25 MT SWL)
16) MAX OUTREACH OF CRANES:
    3M /24M / ABT 8 MTRS FROM SHIP SIDE
17) GRABS: 4 X 8 CBM (COAL / COKE CARGO ONLY)
18) INTERNATIONAL GRT/NRT : 28029 / 16154
19) SPEED/CONSUMPTION: AS PER MTERMS
20) CONSUMPTION IN PORT : AS PER MTERMS
21) BUNKER TANK CAPACITY:
    (FO(380CST) ABT 2000 CBM /DO ABT 275 CBM
22) FRESH WATE PRODUCTION (DAILY): ABT 20 MT
23) FW TANK CAPACITY: ABT 425 MT
24) TYPE MAIN ENGINE AND BHP
    SINGLE SCREW SULZER 5RTA 62: OUTPUT 9925 BHP
25) ITF OR EQUVLNT
26) HOLDS CO2 FITTED : YES
27) AUSSIE HOLD LADDERS: YES
28) STANCHIONS: NIL
29) STRENGTHENED FOR HEAVY CARGOES: YES
30) STRENGTH (MT/M2) ON TANKTOP: 23
    DECK : 1.58
    HATCHCOVERS: 1.75
    FLOOR SPACE (M2) HOLD BY HOLD:
    538 /573 /538 /538 / 446
31) PEDESTAL HEIGHT FM WEATHERDECK:
    HEIGHT OF CRANE COLUMN FRM MAIN DECK TO HEEL OF JIB: 11.8 M
32) NATIONALITY OFFICERS/CREWS : INDIAN / INDIAN
33) MASTER : RVTG NAME
34) H AND M VALUE :
    TOTAL INSURED VALUE INDIAN RUPEES 878.3 MILLION
35) UNDERWRITERS: UNITED INDIA INSURANCE CO. LTD.
36) OWNERS P N I CLUB: SMUA (TB REVISED)
37) WHERE BUILT: HSL, VIZAG INDIA
38) HOME PORT : MUMBAI
39) CALL SIGN : V I S T

4

Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

40) TLX :341903140
41) INMARSAT: SATCOM C 441900285
    FLEET 77 PHONE NO. +341903116
    EMAIL : master@sea.amosconnect.com
42) VESSELS CLASS: BV-RS
43) LAST 5 CARGOES: PRESENT CGO : COAL /IORE -METCOKE
44) MAX CONSTANTS EXCL FRESHWATER : ABT 350 MT
45) DEADWEIGHT ON VARIOUS DRAFTS; PLS COLLECT FROM MASTER

| 11.00M / 36, 1 | SSW ABT |
| 10.50M / 34, 5 | SSW ABT |
| 10.00M / 32, 9-7/10 | SSW ABT |
| 9.50M / 31, 2 | SSW ABT |
| 9.00M / 29, 6-3/10 | SSW ABT |
| 8.50M / 27, 10-7/10 | SSW ABT |
| 8.00M / 26, 3 | SSW ABT |

46) NAME OF HEAD OWNRS:
    THE SHIPPING CORP. OF INDIA LTD., MUMBAI

DETAILS ALL ABOUT

## Clause 32.

Charterers to have the benefit of any return Insurance Premium receivable by Owners from their Underwriters, as and when received from Underwriters, by reason of the vessel being in port for a minimum period of 30 (thirty) days if on full hire for this period and pro-rata for the time actually on hire.

## Clause 33.

On-hire and off-hire surveys for bunker and condition to be held jointly by Owners and Charterers. The Cost to be equally shared but in Owners time at delivery port or first port of call and Charterers time at redelivery port. No time to be deducted from hire unless on-hire survey hindering normal loading operation.

## Clause 34.

Both parties to have the option of canceling this Charter Party provided no cargo on board with reasonable notice, if war breaks out between any two of the following countries to such an extent as to render continuation of the Charter Party impossible: U.S.A., France, Republic of Korea and India.

## Clause 35.

Should the vessel put back whilst on voyage by reason of any accident or breakdown or deviation upon the course of voyage caused by sickness of or any accident to the crew or any person on board the vessel other than person traveling at the request of Charterers, or by reason of the refusal of the Captain or crew to perform their duties, the hire shall be suspended from the actual time of putting back until she is again in the same position or regain the line of voyage, whichever is the shorter distance, and voyage resumed therefrom. Bunkers consumed during the period shall be for Owners' account.

5

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

Clause 36.

Charterers shall not in any event be liable for claims in connection with stevedore damage suffered by the vessel and/or her equipment unless : -

A)   Master advises Charterers or their agents in writing or by cable within 24 (twenty four) hours of occurrence of any damage for which the Master considers Charterers liable, so that Charterers may claim against stevedores or parties responsible. In case of hidden damage, same to be reported as soon as discovered, but always latest 24 hours after departure from last discharging port of the voyage of occurrence.

B)   Such damage shall have been entered in vessel's log books and

C)   Master shall also have held stevedores or parties responsible for damage liable in writing or by cable with copy to Charterers.

If extent of damage cannot be ascertained on occurrence, Owners/Master must report occurrence of damage in accordance with A), B) and C) as above and details may follow when examination possible. If at time of redelivery there remains outstanding damage for which Charterers may be liable but which, without affecting the seaworthiness and ability to trade normally of the vessel, can be repaired by Owners at any convenient time after redelivery, Owners undertake to accept redelivery under Clause No.4 of this Charter Party.

If redelivery is accepted as above, Charterers undertake to reimburse Owners cost of repairs as ascertained later by mutually agreed surveyor when repairs carried out and liabilities established.

Damages affecting vessels sea/cargo worthiness and trading capabilities to be repaired before sailing present port.

Clause 37.

Vessel to be delivered with valid deratization or deratization exemption certificate on board, and if this does not cover the whole period of Time Charter and fumigation is necessary, cost of same and detention to be for Owners' account, except as provided for in Clause No.2.

Clause 38.

Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo. Owners and Master also undertake to co-operate with Charterers in taking necessary steps for cargo fumigation, if necessary at Charterers' time, risk and expense. If hospitalization and hotel accommodation is required for the crew due to fumigation, same to be for Charterers account.

Clause 39.

Vessel to possess the necessary certificates to comply with safety and health regulations and current requirements at all ports of call.

Clause 40.

Charterers to have the option of holding a superficial inspection of the vessel at any time. Owners or Master giving every facility to carry it out.

5

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

### Clause 41. Bimco Standard War Risks Clause for Time Charters, 2004 (Code Name: CONWARTIME 2004)

(a) For the purpose of this Clause, the words:

(i) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported:

war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents' right of search and/or confiscation.

(d) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

7

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

(f) The Vessel shall have liberty:-

i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(h) If in compliance with any of the provisions of sub-clauses (h) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

Clause 42.
On arrival at first load port, vessel's holds to be clean, swept, washed down by water and dried up so as to receive Charterers intended cargoes in all respects free of salt, rust scale loose, and previous cargo residues to the satisfaction of NCB N USDA or similar independent surveyors. Should the vessel not be approved by both surveyor, vessel to be placed off-hire from failure of inspections until vessel passes her inspection and any additional direct expenses/ time incurred thereby to be for owner's account.

Vessel to be redelivered with clean swept holds but Charterers to have the option to redeliver the vessel without cleaning holds with Charterers paying lumpsum USD4,000 excluding dunnage/debris/ removals /disposals.

8

Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

#### Clause 43.

Owners advise Master's name, Owners to give advance notice to Charterers with full name of new Master when Owners decide to change Master.

#### Clause 44.

Charterers undertake to keep Owners and Master informed during the period as regards the itinerary of the vessel and the name of their agents at port of call.

#### Clause 45.

Charterers agents at the various ports of call to take care of routine vessel's business including crew changes (Owners agree to pay Charterers' agents the specific fee for the crew change) and medical attention, water supply, delivery of cash without charging Owners any agency fee unless clearly agreed for the service rendered, but only the actual cost of any services and actual expenses incurred. For important matters, Owners to appoint their own agents.

#### Clause 46.

Owners/Master to authorize Charterers or their agent to sign original Bill(s) of Lading if required by Charterers always in strict accordance with Mate's receipt. Charterers to indemnify owners for all consequences arising out of such signing of Bills of Lading. No antedated or predated Bills of Lading to be issued.

In case of switch bills of Lading required by Charterers, owners agree to issuance of second set of bills of lading strictly as per mates receipt. Changes can be effected only to the extent of shippers, notify address and consignee /destination.

Other contents of first set of bills of lading to remain intact, cargo quantity, specification, date of bills of lading. Second set of bills to be issued only after receipt of all copies of first set of bills of lading including original bills of lading by owners or owners authorised agents. Owners will not issue any non-negotiable bills of lading unless all the originals of the first set of bills of lading are received by owners or their authorised agents.

Further the Charterers to indemnify owners against all consequences of such issuance of bills of lading with changed destination / notify address/ consignee / shippers as per Owners P and I club wording format. Letter of indemnity to be signed by Charterers only.

#### Clause 47.

Owners warrant that vessel's hatch covers are to be watertight all throughout this Charter period and if any hatch covers found defective, same to be rectified at Owners time and expenses to Charterers satisfaction, Charterers also have the right to carry hose test on all hatches at any time, during this charter.

#### Clause 48.

Owners' P & I Club: SMUA

Charterers to have the benefit of Owners' P & I Club so far as the club rules permit.

Notwithstanding anything that may be contained in this Charter Party, to the contrary, it is expressly agreed that the Owners shall remain responsible for, and indemnify the Charterers against all claims arising in connection with loss of life, personal injury or similar claims where Owners are liable.

9

# Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

Charterers' P & I Club: UK

**Clause 49.**
If the vessel is off-hire for a consecutive period of 15 (Fifteen) days, Charterers have the right to cancel this Charter Party without any further obligations under this contract on the part of the Charterers, provided no cargo remaining on board.

**Clause 50.**
All taxes/dues and charges on the vessel and/or cargo and/or freight and/or charter hire arising out of cargoes carried or ports visited under this charter to be on Charterers account.

Any taxes imposed by the vessel's country of domicile to be on Owners account.

**Clause 51.**
Cargo gear to be in a fully efficient state as designed during the currency of timecharter.

In the event of breakdown of cargo gears by reason of disablement of insufficient power or otherwise, the hire to be reduced pro-rata for the actual period of such insufficiency in proportion to actual working number of cargo gears.

If Charterers elect to continue work on hatch or hatches affected by breakdown by hiring shore appliances, Owners are to pay for shore appliances but in such case Charterers are to pay full hire for all time shore appliances are working. Any stevedoring and/or labour charges additionally incurring due to breakdown of vessel's equipment including costs of standby stevedore labour to be for Owners' account.

**Clause 52.**
In case of loss of time due to boycott, picket at any port or place by the shore and/or port labour and/or the tug boat(s) and/or the pilot(s) and/or by Governmental Authority directly attributable to Ownership, vessel then to be off-hire for any time lost thereby and the cost of bunkers consumed during the period to be for Owners' account, provided vessel is not able to render her services.

**Clause 53.**
Cargo claims as between the Owners and the Charterers shall be settled in accordance with the International Club New York Produce Exchange Agreement of February 1970, as amended 1996, or any subsequent modification or replacement thereof.

**Clause 54.**
Any delay, expenses and/or fines incurred on account of smuggling, if caused by Master, Officers and/or crew to be for Owners' account. If caused by Charterers or their agents or representatives to be for Charterers' account.

**Clause 55.**
All negotiations and eventual fixture to be kept private and confidential.

10

# Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

**Clause 56.**
Owners to allow Charterers to discharge cargoes without presentation of original Bills of Lading by providing with Letter of Indemnity to be signed by Charterers only which wording to be provided by owners P N I club together with fax copy of Bills of Lading.

**Clause 57.**
Owners warrant that tank top to be flat except sloped parts on sides and suitable for grab discharging/bulldozer operation subject to tank top strength. No obstructures/pillars in vessel's holds.

**Clause 58.**
Owners or Master to cable to Charterers expected time of delivery and expected quantities of IFO and MDO remaining on board at time of delivery upon fixing.

**Clause 59.**
For the purpose of computing hire payments, the time on delivery/redelivery to be based on G.M.T both ends, laydays/cancelling to be local time basis.

## Clause 60, BIMCO Standard Law & Arbitration Clause 1998 - English Law, London Arbitration

This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

Notwithstanding anything to the contrary in this Charter-Party, the parties agree that all arbitration where the amount in issue in the dispute(s) is less than USD 50,000 shall be conducted according to the small claims procedure 1989 (S.C.P) of the London Maritime Arbitrators Association(as amended from time to time)

51

Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

## Clause 6 l.CARGO EXCLUSIONS

Creosoted goods, sulphur, salt, scrap, motor blocks and turnings, borax, logs, pitch, tar, expellers, petroleum and its products, calcium carbide, hides, bulk cement, charcoal, explosives and all cargoes under IMO class 3-4-5 (including black powder, blasting caps, dynamite, tnt, fireworks etc). Livestock, acids, dangerous and/or injurious and/or inflammable and/or corrosive cargoes which may damage the vessel or injure the crew, arms, ammunition, nuclear and/or radio active materials or waste, ammonium nitrates(only fertilizer grade allowed), direct reduced iron, hot briquetted iron, sponge iron, motor spirit, turpentine, calcium hydroxide, calcium carbide, calcium hydrochloride, palm kernel extraction, expart grass, seed cakes, all types of blocks including stone and marble blocks, petcoke, asphalt, copra/copra pellets, ferro silicon, silicon manganese, fish meal, cotton, naphtha, technical urea, milled rice, zinc ashes, naphtalene, contraband of war, castor black canary seeds, mealbone meal, asbestos (unless shrink wrapped on pallets), pencil pitch, sunflower and niger seed expellers and cargoes not compatible with vessel's capability. Bombs and any explosive materials, meat, prereduced iron pellets, concentrates, expellers of any kind, dangerous, injurious, harmful and hazardous cargoes.

Harmless concentrates to be allowed, provided same are loaded/stowed/discharged in accordance with local rules and IMO regulations to the masters satisfaction. Owners allow carriage of "technical ares of fertilizer grade only" Owners allow "Metcoke" "Silica (industrial grade only) and bulk mineral sand to be allowed.

Charterers have option to load one shipment of non-dangerous, non-sticky, non-oily, non-greasy, green delayed and/or calcined petcoke and same not to be last cargo. Charterers to arrange thorough cleaning of holds upto entire satisfaction of master. Such cargo to be always loaded, stowed, trimmed and discharged as per applicable IMO' /IMDG' local regulations.

## TRADE EXCLUSIONS

Lebanon, Somalia, Ethiopia, Israel, Iraq, Sudan, Sri Lanka (Colombo always Allowed) Alaska, Bangladesh, Cambodia, Libya, Pakistan, Cuba, Turkish Occupied Cyprus, Albania, Monrovia And Sierra Leone, Mayamar, Syria, Nigeria, Yugoslavia and its ex-republics excluded, however Charterers permitted to trade Slovenia and Croatia, CIS Pacific Ports, North Korea, Vessel not to trade in ice or Ice Bound Ports or to follow Ice Breakers or trade in any area where light bouys are likely to be withdrawn due bad weather/ice. Angola, Benin, Dem. Rep.of Congo, Eritrea, Equitorial Guinea, Guinea, Guinea-Bissau, Haiti Island, Israel and its controlled territories, Kiribati, Lebanon, Liberia, Madagascar, Mozambique, Montenegro, Nauru, Namibia, North Korea, , Russia/CIS Pacific ports, Siberia, Serbia, Solomon Islands, Surinam, , Yemen, , and countries where conditions of hostilities exist and war or war like areas, areas to which U.N. sanctions apply or may apply from time to time.

Vessel not to be Sub-Chartered to companies based in excluding countries.
Vessel to be always left in safe trim stability and other conditions that would be required for safe navigation within the port(s) as well as sea passages.
Vessel not to be sub chartered to companies based in countries where trade restrictions are imposed. Vessel not to trade in areas having war/war like conditions and all countries against whom U.N. sanctions apply from time to time.

12

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

A) Charterers shall have the privilege of breaking institute warranty limits by giving due advance notice to owners and same shall be performed in safe season. Charterers to seek owners' prior consent for above which shall not be unreasonably withheld. Charterers paying any extra insurance premium thereby incurred for the entire duration of breaching institute warranty limit against voucher per owners hull n machinery underwriters "M/s. United India Insurance Co. Ltd." this extra insurance to be covered by owners with their hull underwriters and to be reimbursed by the Charterers against presentation of said invoice. (Owners may consider on case to case basis above clause.)

B) Any additional increased/extra war risk insurance premium over and above owners basic/normal war risk insurance premium for vessel and crew, if any, resulting from Charterers trading of the vessel to be for the Charterers account, war bonus to crew, if required to meet Charterers trade also to be for Charterers account. The vessel shall not be required to proceed to a war area unless insurance is available on payment of an additional premium, subject to Owners prior approval, which not to be unreasonably withheld.

### Clause 62.
Gangway watchmen, if any, at loading and/or discharging ports to be for account of party ordering same. If gangway watchmen are compulsory according to local regulations, same to be for Charterers' account.

### Clause 63.
The vessel to have the liberty of using diesel oil when entering and leaving port and for manoeuvering in shallow/narrow waters.

### Clause 64.
With regards to oil pollution, Owners confirm that vessel will have valid IOPP certificate on board and Owners guarantee a valied certificate of financial responsibility in compliance with requirements of U.S. Water Quality Improvement Act of 1970 and OPA 90 and any amendments thereto.

### Clause 65.
Should the vessel be captured or seized or detained or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of the Charterers or their agents. Any expenses incurred by and/or during the above capture or seizure or detention or arrest shall be for Owners' account provided Charterers' use of the vessel is actually prevented, unless caused by Charterers or their agents in which case to be for Charterers' account and vessel to remain on full hire.

### Clause 66.
Charterers to ensure bunker suppliers co-operate with ship's staff and sign sample bottles.

### Clause 67.
Opening and closing of hatches to be always done by crew members free of expense to Charterers, if permitted by local port regulations provided available at the time and in case any delay and additional expenses caused by defect in hatch opening/closing to be for Owners' account.

13

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

### Clause 68.

Owners confirm vessel is not blacklisted in U.S.A. trading with ITF or equivalent in good order. Owners confirm vessel is not black-listed by any Arab League countries. Vessel is not black-listed by U.S./Canadian Longshoreman's union.

### Clause 69.

Charterers to pay Owners lumpsum US$1,200.00 per month or pro-rata for covering costs of cable/entertainment /victualling excluding cost of cigarettes and alcohol.

### Clause 70. DOUBLE BANKING CLAUSE

The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(a) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(b) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(c) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(d) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

### Clause 71.

Normal quarantine time and expenses for vessel entering port(s) to be for Charterers' account. But any time of detention and expenses for quarantine due to pestilence, illness etc., of Master, Officers or crew to be for Owners' account.

### Clause 72.

Owners to warrant that vessel is single deck self-trimming type bulk carrier, suitable for carrying full and homogeneous (single grade) cargoes of grain in all holds without requiring any grain fitting/bagging/strapping/securing and additional trimming for untrimmed ends and vessel to have on board valid grain loading booklet in accordance with SOLAS 1974 regulations and IMCO resolution a 364(viii) as adapted in 1974 and any subsequent amendments, furthermore, vessel to have on board approved table of heeling moments for filled holds-untrimmed ends, in accordance with IMCO BC XIX/INF 4.

14

## Rider Clauses to M.V. "GOA" – Charter Party Dated 28th June, 2005

The cargo must be loaded as per the grain loading booklet. All expenses incurred due to these documents not being on board are to be for the Owners' account. Master to co-operate best to load cargo with natural segregation of cargo when preliminary stowage is presented.

#### Clause 73.

Charterers guarantee vessel to remain in seaworthy/trim for shifting between loading port (s) and berth(s) and between discharging port(s) and berth(s) to Master's satisfaction.

Master shall not request bagging/strapping unreasonably without any clear reason related to vessel's seaworthy and trim.

#### Clause 74.

Vessel has never called/traded C.I.S. Pacific ports in last 24 months.

#### Clause 75.

Owners guarantee that the vessel can safely undertake voyage in ballast without carrying solid ballast but with fuel and water ballast only.

#### Clause 76.

The service of Ocean Routes may be engaged at Charterers' expense to recommend optimum route and advise Master about weather en-route. Master shall endeavour follow Ocean Routes' recommendations and directions or routes and/or weather so far as not in contradiction to the safety of the crew.

Charterers are not responsible in any way for Ocean Routes' information, directions and recommendations which are provided as an assistance only and entirely without prejudice. The Master shall prepare a Deck Log Abstract for each sea passage showing daily noon position and all other relevant information.

#### Clause 77.

Master to endeavour to make vessel arrive at discharge port with even keel and lowest possible draft.

Master to advise stowage plan.

#### Clause 78.

Owners guarantee that the vessel is not black-listed by any Arab league countries.

#### Clause 79.

Owners warrant vessel is suitable for grab discharging / grab to be fully fitted/ bulldozer operation no obstructures/pillars in vessels holds.

#### Clause 80.

Owners warrant that vessel's holds are clear of any fittings/super-structures such as cardeck curtain plates whatsoever.

#### Clause 81.

Charterers liberty to load more than one cargo in the same hold, but Owners not to be responsible for admixture of or contamination of cargoes carried in same hold on that account.

15

Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

All separation to be for Charterers account.

## Clause 82. Concentrates loading clause

Concentrates to be loaded, separated and discharged in accordance to IMDG code and code of safe practice for loading bulk cargoes- part 2 and Canadian/local /international regulations and recommendations.

For loading concentrates, stowage to be within vessel's strength, stress and stability and master's approval to be obtained prior loading.

Charterers to allow owners/master to appoint P & I surveyors to supervise loading, stowing, trimming, execution of separation etc as is customary at loading port at Charterers time to the satisfaction of survey or and master Owners/Charterers to equally share the cost of survey.

Before loading concentrates, Charterers to supply shippers certificates of flow moisture content evidencing cargo compliance with IMO/IMDG regulations.

## Clause 83.

If vessel does not give any garbage and garbage removal cost is compulsory then same to be for Charterers account.

## Clause 84. NAABSA Clause.

Charterers have the option to trade NAABSA where it is customary. However, same always to be subject to Owners/Master's approval which shall not be unreasonably withheld. Vessel not to manoeuver or shift while she is safely aground and further vessel not to be forcibly taken out while the vessel is safely aground.

## Clause 85.

Owners/Master to give to Charterers 5/3/2 days approximate notice of delivery and 24 hours definite notice.

## Clause 86. Bimco Standard ISM Clause.

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel, and thereafter during the currency of this Charter Party, the Owner shall procure that both the vessel and the company (as defined in the ISM Code) shall comply with the requirements of the ISM Code.

Upon request the Owners shall provide a copy of the relevant document of Compliance (DOC) and Safety Management Certificate (SMC) to Charterers, except as otherwise provided in this Charter Party, loss, damage, expenses or delay caused by failure on the part of the Owners or the company to comply with the ISM Code shall be for the Owners account.

## Clause 87.

LMAA clauses to apply for disputes not exceeding USD50,000/-

## Clause 88.

16

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

Owners warrant that vessel fitted with Aussie/New Zealand trading in accordance with WWF request and or local authority/regulatory bodies.

Owners warrant that valid ITF or equivalent agreement for the vessel covering any port or place is available on board for the whole period of this Charter Party.

### Clause 89.

Owners to warrant that vessel is a single deck self trimming bulk carrier (self trimming always mean trimming by Athwardship and not by fore and aft) and can load a full and complete cargo in each hold according to latest Solas regulations, subject to no draft restriction at both ends, extra trimming, if required to be Solely at Owners risk/time and expenses.

### Clause 90.

With regards to oil pollution, Owners warrant a valid certificate of financial responsibility in compliance with requirements of U.S. water quality improvement act of 1970 and OPA 90 and any amendments thereto. (Owners will arrange for such certificate when required).

### Clause 91.

Charter Party to be governed and construed in accordance English law and arbitration in London.

### Clause 92.

General Average/ Arbitration in London. English law to apply.

### Clause 93. Deck Loading Clause

Deck cargo to be loaded in accordance with vessel's strength and stability and to master's discretion at Charterers time/risk and expenses and to be cleaned suitably in Bills of Lading. Cargo loaded on deck should not affect the load density assuming 80% moisture content in cargo loaded on deck. Charterers to indemnify Owners and remain accountable for any damage caused to the vessel, its crew and/or any person and/or any other property due to the loading of such cargo onto the deck.

### Clause 94.

Charterers to weld padeyes on deck/hold at Charterers time/expenses and same to be removed prior to redelivery but Charterers option to redelivery vessel without removing padeyes paying USD 8,00 per padeyes.

### Clause 95.

Owners warrant vessel free from Asian Gypsy Muth and never called C.I.S. Pacific ports for last three years otherwise owners to be responsible for any consequences caused therefrom furthermore Owners guarantee that vessel meets all Canadian/USDA plant protection and quarantine OFC regulation.

### Clause 96.

Owners warrant that vessels holds are clear of any fittings/ superstructures such as car deck curtain plates whatsoever.

### Clause 97.

Charterers option to load intended cargo on deck / hatch cover at Charterers time/ expenses risk in accordance with vessels strength and stability at masters discretion.

17

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

#### Clause 98.

Intermediate hold cleaning to be performed by vessel's crew as per Charterers instruction provided local/port/shore regulation/crew union agreement/weather condition and time permitting. Crew will do their best/utmost to clean vessel's hold as customary in order to get vessels holds accepted for the next cargo. Owners are however not responsible in case vessel fails to pass hold inspection during the intermediate voyages. Vessel in any case to remain on hire and Charterers to pay USD    /- per used hold for intermediate hold cleaning.

#### Clause 99.

Owners confirm that vessel is fully fitted for Panama/Suez canals in accordance with latest requirements of the relevant authorities.

#### Clause 100.

Should vessel be placed off-hire during the currency of this Charter Party for reason on behalf of Owners/vessel Charterers have the option of adding such off-hire period to charter period.

#### Clause 101.

Owners to guarantee that all crewmembers shall have U.S. Visa, failing which all costs and expenses for compulsory watchmen or armed guards required in U.S. shall be for Owners' account. Charterers to advise owners well in advance their intention of calling USA port.

#### Clause 102.

Charterers have the option to break institute warranty limits in fair season/weather during the period of this charter-party, subject to owners prior approval, which is not to be unreasonably withheld. Charterers to pay owners net additional insurance premium incurred as a result of Charterers exercising the above option, on hull and machinery and loss of hire insurance as per original vouchers from Owners underwriter, united India Insurance Co. Ltd.

#### Clause 103. ISPS Clause

(A) (i) From the date of coming into force of the international code for the security of ships and of port facilities and the relevant amendments to chapter XI of Solas (ISPS Code) in relation to the vessel and thereafter during the currency of this charter party, the owners shall procure that both the vessel and "the company" (as defined by the ISPS code) shall comply with the requirements of the ISPS code relating to the vessel and "the company". Upon request the Owners shall provide a copy of the relevant international ship security certificate (or the interim international ship security certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the company security officer (CSO).

(ii) Except as otherwise provided in this charter party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the owners or "the company" to comply with the requirements of the ISPS code or this clause shall be for the Owners' account.

(B) (i) The Charterers shall provide the CSO and the ship security officer (SSO)/master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-

18

## Rider Clauses to M.V. "GOA" - Charter Party Dated 28th June, 2005

letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this charter party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this clause shall be for the Charterers' account.

(C) Notwithstanding anything else contained in this charter party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the ship security plan shall be for the Owners' account.

(D) If either party makes any payment which is for the other party's account according to this clause, the other party shall indemnify the paying party.

#### Clause 104
Owners confirm vessel's grabs are able to lift intention, free of charge to charterers for using same. Vessel's gear and grabs to be at charterers full disposal if required for loading / discharging / lightening operations.

- K  N  D -

19

## NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following clause shall apply :

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of this ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, Operators, or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contract".

## NEW JASON CLAUSE

"In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible by statute, contract, or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods,

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if such salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery"

## U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved 16 April 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by then carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (exit as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in custody of the carrier.

The carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery, or loss of or damage to the goods occurring while the goods are not in the actual custody of the carrier.

## CHAMBER OF SHIPPING NUCLEAR CLAUSE

Notwithstanding any other provision contained in this charter, it is agreed that nuclear fuels or radioactive products or where are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party.

This exclusion does not apply to radio isotope used or intended to be used for any industrial, commercial, agriculture, medical or scientific purpose, provided Owners' prior approval has been obtained to the loading thereof.

## U.S. SECURITY CLAUSE FOR TIME-CHARTERING

If the vessel calls in the United States, including any U.S. territory, the following provisions shall apply with respect to any applicable security regulations or measures:

Notwithstanding anything else contained in this Charter Party all costs or expenses arising out of or related to security regulations or measures required by any U.S. authority including, but not limited to security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence.

## U.S. CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIME CHARTER PARTIES

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

i) Have in place a SCAC (Standard Carrier Alpha Code);

ii) Have in place an ICB (International Carrier Bond);

iii) Provide the Owners with a timely confirmation of i) and ii) above; and

iv) Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, the Vessel shall remain on hire.

(c) If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.

(d) The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

21

# EXHIBIT 5



KOREA LINE CORPORATION
Daeil Bldg. #45, Inea-Dong, Changno-Gu, Seoul, Korea 110-290
TEL (02) 370:-0114 FAX (02) 723-1610 TLX K-27296, 24206

STATEMENT OF ACCOUNT

T/C OUT TO "FARENCO SHIPPING CO., LTD., BVI"

DATE : 31-Jul-07

BROKER : K-CHORUS
VESSEL : MV GOA

RE : STATEMENT OF ACCOUNT
VOYAGE 10

C/P DATE : 28-Jun-05
(UNIT :US$)

| NO. | DESCRIPTION | | | | | | Dr | Cr |
|---|---|---|---|---|---|---|---|---|
| 1 | FROM | 15:48 GMT | 2005/06/26 | | | | | |
| | TO | 12:56 GMT | 2005/07/26 | | | | | |
| | ON-HIRE 27.638194 DAYS X USD | | | 14,500.00 = USD | | 403,653.82 | | 395,749.30 |
| | OFF-HIRE 0.54514 DAYS X USD | | | 14,500.00 = USD | | 7,904.52 | | |
| 3 | 3.75 PCT ADD. COMM. | | | | | | 14,840.60 | |
| 4 | 1.25 PCT BROKERAGE TO OCEAN LAND | | | | | | 4,946.87 | |
| 5 | B.O.D. | | | | | | | |
| | IFO : | 819.200 | MT | X | USD | 280.00 = USD | 229,376.00 | 294,513.00 |
| | MDO : | 122.900 | MT | X | USD | 530.00 = USD | 65,137.00 | |
| | B.O.R. | | | | | | | |
| | IFO : | 904.803 | MT | X | USD | 280.00 = USD | 253,344.84 | 315,831.84 |
| | MDO : | 117.900 | MT | X | USD | 530.00 = USD | 62,487.00 | |
| 5 | BUNK CONSUMPTION DUE TO OFF-HIRE | | | | | | | |
| | MDO : | 0.54514 | DAY X 347 X 530 | | | = USD | 866.77 | 866.77 |
| 7 | CABLE/ENTERTAINMENT/VICTUALING | | | | | | | 1,076.77 |
| 8 | I.L.O,H.C. | | | | | | | 4,000.00 |
| 9 | ON-HIRE SURVEY | | | | | | 600.00 | |
| | OFF-HIRE SURVEY | | | | | | 141.00 | |
| 10 | FRESH WATER SUPPLY AT GOA | | | | | | 350.00 | |
| 11 | EST OA | | | | | | 1,500.00 | |
| 12 | ACT.O/A | | | | | | | |
| | (V-010) | AT | LIANYUNGANG | | USD | 0.00 | 0.00 | |
| | | | SINGAPORE | | USD | 0.00 | | |
| | | | GOA | | USD | 0.00 | | |
| | | | 2.5 % COMM. | | USD | 0.00 | 0.00 | |
| 13 | REMITTED FROM CHARTERERS | | | 1st | USD | 276,416.78 | 276,416.78 | |
| | | | | 2nd | USD | 11,617.34 | 11,617.34 | |
| | | | | 3rd | USD | 16,376.83 | 16,376.83 | |
| | | | | 4th | USD | 22,385.65 | 22,385.65 | |

| | | 5th | USD | 3,179.37 | | 3,179.37 |

S. TOTAL
BALANCE DUE TO OWNS

| | | | 585,873.68 | 698,518.44 |
| | | | 32,644.76 | |

G. TOTAL

| | | 698,518.44 | 698,518.44 |

D. H. HEO
GENERAL MANAGER